## Guilinger *v*. Pennsylvania Railroad Co., Appellant.

Argued March 16, 1931.   Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*J. Villard Frampton, John L. Nesbit, Peter M. Speer* and *James H. Courtney,* for appellant.—Plaintiffs, under their own proofs, were in a situation with which they were familiar and from which, under their own knowledge of the conditions actually existing, danger was reasonably to be apprehended until the crossing was made, and failed to continue to look and exercise due care after committing themselves to the crossing, and to observe the danger confronting them, with the result that they were struck as they entered upon the second track: Carroll v. R. R., 12 W. N. C. 348; Walsh v. R. R., 222 Pa. 162; Myers v. R. R., 150 Pa. 386; Mack v. R. R., 92 Pa. Superior Ct. 455; Gasser v. Ry., 266 Pa. 493; Massinger v. R. R., 300 Pa. 6; Lunzer v. R. R., 296 Pa. 393; Bernstein v. R. R., 252 Pa. 581; Tull v. R. R., 292 Pa. 458; Miller v. R. R., 299 Pa. 63; Gelwicks v. R. R., 301 Pa. 68.

Plaintiffs failed to walk ahead of the truck and on the crossing to look for the approaching train: Bistider v. R. R., 224 Pa. 615; Benner v. Ry., 262 Pa. 307; Kinter v. R. R., 204 Pa. 497; Keller v. Ry., 35 Pa. Superior Ct. 488; Mankewicz v. R. R., 214 Pa. 386.

*Edmond C. Breene* and *A. B. Jobson,* for appellees.—
The facts in this case clearly bring it within the decisions of Siever v. Ry., 252 Pa. 1, and Hoffman v. R. R., 278 Pa. 246.

OPINION BY MR. JUSTICE MAXEY, April 13, 1931:

At 7:27 a. m. on June 30, 1926, the plaintiff, Leroy Guilinger, was driving a large motor truck from west to east on a public road leading through and from the plant of the Pennzoil Co. across the tracks of the defendant company to a state highway. He was accompanied by Guy C. Kellogg and a man by the name of Hopwood. All three were employed by the Pennzoil Co., Guilinger being a truck driver. On the day of the accident Guilinger, Kellogg and Hopwood were taking a load of lumber across the above tracks for their employer. The crossing where the accident took place is located in a built-up section of Rouseville Borough, Venango County, Pa. It is a much-used thoroughfare and is crossed at grade by five tracks of the defendant company. The tracks, numbered from west to east (the direction plaintiff was driving) are (1) a siding; (2) main southbound track; (3) main northbound track; (4) and (5) sidings. The public road on the west side of the crossing is 37 feet wide for a considerable distance. Along its south side and near the railroad siding No. 1 is a three-story brick barrel house of the Pennzoil Co. This extends along the southern side of the road 90 feet and southerly along the railroad siding No. 1 156 feet. On the morning of the accident the view south at track No. 1 was further obstructed by some box cars standing on the siding, the first box car being about 40 feet south of the crossing. The distance from the northeast corner of the barrel house to the first rail of the first track is 5 feet. The distance from the east rail of siding No. 1 to the first rail of the southbound track is 9 feet 1½ inches. The distance between the southbound track

and the northbound track is 8 feet 1½ inches. All the tracks are of standard gauge, 4 feet 8½ inches.

The plaintiff, Guilinger, with Kellogg and Hopwood in the seat with him, drove the truck to the north of the center line of the approach and stopped with the front end of the truck a sufficient distance from the west rail of the first track so as to clear any trains moving thereon, and, according to his testimony, he saw and heard no train approaching. It was testified that the point at which he stopped for observation was the usual and customary place for vehicles to stop before entering the crossing. At the point the truck stopped, the driver had an unobstructed view south along the southbound main track of 150 to 200 feet and an unobstructed view north of 300 feet. There was nothing to interfere with the hearing of signals. There was no whistling post maintained by the defendant company south of the crossing. All the occupants, according to their testimony, looked and listened, but heard no signals. Guilinger then threw the motor into low gear and started across the track at a speed of from 3 to 4 miles an hour. He looked first up the track and then down the track to see if there were any trains coming. Three hundred feet south of the crossing the tracks curved to the west, obscuring the view of approaching trains. The truck was on track No. 2, i. e., the southbound main track, when Guilinger saw the train coming north on the southbound track at a speed of 35 to 40 miles an hour. Guilinger bade the other men jump and tried to clear the track with the truck, but the latter was struck at its center and thrown north a distance of 150 to 200 feet. The train stopped within 200 feet. Both Guilinger and Kellogg sustained substantial physical injuries. Suit was brought, the case was tried and the jury returned a verdict of $12,500 for the plaintiff Guilinger and $7,500 for the plaintiff Kellogg. Motions for a new trial and for judgment n. o. v. were made. The former was not

pressed; the latter was refused. Judgment was entered on the verdict.

Appellant contends that plaintiffs were guilty of contributory negligence as a matter of law and that the court should have entered judgment for the defendant, n. o. v. The first assignment of error relates to the refusal of the court to enter judgment n. o. v. The third and seventh relate to the refusal of the court to give binding instructions for the defendant. The fifth is related to the third; the ninth to the first, and do not require separate discussion. The even numbered assignments refer to the companion case of Kellogg against the same defendant, separately decided by us though not separately discussed. In Mountain v. American Window Glass Co., 263 Pa. 181, this court held that on a motion for judgment n. o. v. the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence. See also King v. Darlington Brick & Mining Co., 284 Pa. 277. In other words, on a motion for judgment n. o. v., it is not for the court to determine whether or not the court would arrive at a verdict different from the verdict the jury arrived at, but whether or not there was evidence in the case that would negative the theory that the jury's verdict was founded merely upon a guess or conjecture.

The duty of a driver of a vehicle about to cross a railroad, in respect to stopping and viewing the tracks, has been often defined. In Siever v. Pbg., C., C. & St. L. Ry. Co., 252 Pa. 1, at page 8, this court, in an opinion by Justice MOSCHZISKER, laid down this principle: "When a driver stops at a place where he cannot get a good view of the railroad he is about to cross from the vehicle in which he is riding, he must get out and walk to a spot where he can secure such a view, and his failure so to do constitutes contributory negligence in law,

for stopping 'where an approaching train cannot be seen......is not an observance of the duty to stop, look and listen......'; but when he comes to a standstill at a usual stopping place, where he can get some view of the tracks, whether he should go forward to a 'better place to look,' is a question for the jury to determine." In the case of Hoffman v. Pittsburgh & L. Erie R. R., 278 Pa. 246, this court, in an opinion by the present Chief Justice, said: "Stopping where approaching danger is not visible is not an observance of his [i. e., the driver's] duty to stop, look and listen; if, however, he stops at the usual stopping place where a view of the tracks is obtainable for a reasonable distance, the question whether he should have gone forward to a better location to look is one for the jury to determine under all the circumstances." In the case before us the appellees could see the track, both north and south, for a greater distance than the plaintiffs could in the cases above cited.

In Shaffer v. P. R. R. Co., 258 Pa. 288, where it appeared that the driver of an automobile stopped at the usual stopping place and as near the crossing as it was prudent to go, from which he had a view up the track for about 300 feet, beyond which his view was obstructed by a building, and that, had he gone ahead of his machine, he could have gained a view of over 1,600 feet, this court said: "The conclusions to be drawn from the evidence are not free from doubt, and in such case the court should not decide the question as one of law...... 'When a driver has stopped at the usual stopping place, whether he should go forward in advance of his team to a better place to look, is a question to be determined by the circumstances of the particular case': Calhoun v. P. R. R. Co., 223 Pa. 298, 300." In Peruzzi v. P. R. R. Co., 99 Pa. Superior Ct. 519, the court in an opinion by Judge KELLER said: "Defendant contends that plaintiff's contributory negligence was established by incontrovertible physical facts and mathematical measure-

ments; that his evidence and that of his witnesses cannot prevail against the measurements and calculations submitted by the defendant. We are familiar with the doctrine invoked by the defendant's counsel and have examined all the cases cited by him as bringing this case within its purview. But that rule is not to be applied in a case of split seconds, involving a close calculation of time and space; it is enforced where the accident occurs so immediately after the plaintiff's entrance on the crossing that it is clearly physically impossible for the injured party to have stopped, looked and listened and not seen the near-by approaching train." In the case just cited, the plaintiff and other witnesses testified that until he got on the first track the view to the right was interfered with by rising ground and weeds so that only about 100 feet was visible to one stopping there.

This court cannot without departing from the established rule in Pennsylvania hold that the plaintiffs, after stopping to look and listen at the usual stopping place, were as a matter of law guilty of contributory negligence because one of them did not alight and go forward and look in both directions from a point where he could have obtained a longer view of the railway they were about to cross. The question under the facts of this case was peculiarly one to be determined by the jury in the light of all the circumstances. Appellant earnestly contends that plaintiff was negligent in not continuing to look and exercise due care after going upon the crossing. The plaintiff Guilinger testified: "I started across the track in low gear, watched first up the track and then down the track to see if there was any train coming." He saw the train at the bend of the road and he thought the time which elapsed before the train struck him was probably three seconds. It was not likely that Guilinger on that occasion was possessed of that cool mental detachment which would enable him to determine the exact number of seconds that elapsed between the time the train burst upon his view and the time it burst upon his

truck.   Kellogg testified that when they proceeded on the tracks he kept listening and watching both ways.

In considering what the plaintiffs did after they entered upon the crossing, it should be borne in mind that the train which struck them was running north on the southbound track (track No. 2) and that they were familiar with the running of trains on that crossing and had never before seen (so they testified) a northbound train running on the southbound track.   These are important facts making up the circumstances by which plaintiffs' alleged want of care is to be measured.   When plaintiffs were struck on the southbound track by a northbound train, they were at least a few feet from the track on which they expected northbound trains to run. If the train that struck them had been running north on the northbound track, it is a fair inference that the truck would not have been struck.   The significance of that is this:   Their attentive powers would naturally be fixed on the tracks to the north because it was from that direction they would expect a train to come on the southbound track.   Guilinger testified that he *first* looked *up* the track and then down the track.   While it does not require much time to turn the head north and then turn it south, even this operation would take a second or two. What is more important is that plaintiffs' attention before they reached the southbound track would be focused north—not south—because it was from that direction they would apprehend danger on the track they were about to cross.   It seems reasonably probable from the testimony that if there was any lack of alert attention from the plaintiffs to the southbound track south of the point of the accident, it was due to the belief naturally held by them that no danger could be expected from that direction until they got over the southbound track onto the northbound track.   While the defendant had a right to run its train north on the southbound track and while it was plaintiffs' duty to look in both directions, it was entirely natural under the circumstances that they

would first look to the north and that their attention should be chiefly concentrated in that direction. Armies have lost battles because their commanders concentrated attention in the direction from which attacks were reasonably expected and gave only slight attention to the direction from which attacks unexpectedly came. Persons accustomed to crossing a one-way street invariably focus their attention in the direction of expected oncoming traffic. A highly vigilant man will be vigilant in all directions, but we cannot hold that the plaintiffs in this case were negligent because after stopping at the customary place and looking and listening they drove onto a southbound track in front of a northbound train, which train was not visible to them 200 feet south from the point when they looked that way a few seconds before. It was testified to by plaintiffs' witnesses that the train that struck the plaintiffs was traveling at the rate of 35 to 40 miles an hour. The train was scheduled to stop at the Rouseville Station, a distance variously estimated from 700 to 2,000 feet north of the crossing. The engineer testified that the engine was traveling at 20 miles an hour when it hit the truck. He applied the emergency brake about 45 or 50 feet south of the crossing. The jury would be warranted in finding that the passenger train was traveling, when the brakes were applied, 30 miles an hour or 44 feet per second. A truck traveling 3 miles an hour travels 4.4 feet per second. The distance from the point where the truck stopped before going on any track, to where it was when the center of it was struck on track No. 2, was about 22 feet. If the train was traveling 30 miles an hour and the truck 3 miles an hour, the train would cover 220 feet while the truck was covering 22 feet. Under all these circumstances, and considering particularly the fact that the train was coming from an unexpected direction on the track where plaintiffs encountered it, we cannot say that as a matter of law the court should have declared that the plaintiffs, under their own testimony

and the testimony offered in their behalf, were guilty of contributory negligence.

The assignments of error are overruled, and the judgment is affirmed.