## Ferguson, Appellant, *v.* Charis.

Argued December 8, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William E. Mikell, Jr.,* with him *Manus McHugh, Earl G. Harrison* and *Saul, Ewing, Remick & Saul,* for appellant.

*Philip Sterling,* with him *Joseph K. Willing,* of *Sterling & Willing,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 15, 1934:

This is an appeal by the plaintiff from the entry of judgment n. o. v. in favor of the defendant in the court below. Plaintiff in an action for trespass secured a verdict in the sum of $3,000, for injuries she received as a result of being run down by defendant's car. The accident took place at the intersection of Arch Street and the Parkway and Sixteenth Street in the City of Philadelphia, at seven p. m., March 28, 1931. The night was misty and rainy. In the center of the parkway there are two "safety islands": one southeast of Sixteenth Street, and the other northwest of Sixteenth Street. Equally distant between these two safety islands is a traffic standard, which has six sets of three lights each: green, amber and red, governing traffic on these highways. Plaintiff testified that she stood on the southeast corner of the Parkway and Arch Street while traffic was against her. She "stood there and there was quite a bit of traffic going by" northwest on the Parkway. When, as she said, "the light showed green," plaintiff started to cross to the island. When about forty-five feet from the curb she was struck by defendant's automobile, seriously injured, and rendered unconscious. At the time of the accident, she was 65 years of age. In the accident the glass in the right cowl light of the defendant's car was broken and the right front mudguard was slightly dented. Defendant testified that he did not see plaintiff at all and did not know anything had happened until he heard a police whistle, stopped, saw the plaintiff lying on the street, and was told that he had hit her. Defendant also testified that he, accompanied by his wife and another woman, was going in a northwestwardly direction on the Parkway at or about the intersection of Sixteenth and Arch Streets and the light was green in his favor "as soon as [he] got to the intersection." He said his driv-

ing speed "must have been about ten miles an hour." He also said he "didn't have time to look at the speedometer." He described the traffic control standard as follows: "There are three lights on the front, and three on Arch Street, and three on Sixteenth Street, and three on the other side coming from the south side," and there are six faces to the signal.

The negligence complained of by the plaintiff was defendant's careless operation of his motor vehicle. The court in rendering judgment n. o. v. said: "The incontrovertible physical facts, according to the plaintiff's testimony, made the occurrence of this accident impossible." We will now discuss the "facts" which the court refers to as "incontrovertible" and "physical." The court said: *"Assuming* that there are three feet to the average and customary step of the adult person, fifteen steps [which plaintiff said she took from the curb before she was struck] *would be* approximately forty-five feet." Plaintiff said she looked in a left direction which was "towards Fifteenth Street," and that she looked both ways on the Parkway and on Arch Street, and that just before she stepped off the curb, she did not see any automobile. The court states the evidence shows that the distance from the west curbline of Fifteenth Street to the east curbline of Sixteenth Street is about 485 feet. The court then said: "We are compelled to *assume* that the plaintiff was walking at an ordinary gait, because there is no testimony that she was going either faster or slower than ordinary. The average distance covered by a person walking at an ordinary gait is 7.33 feet per second. *Assuming* that the plaintiff was traveling at the rate of 7.33 feet per second, in order to reach a point forty-five feet west of the southeast corner of Arch Street and the Parkway in the bed of the Parkway, the plaintiff would have taken 6.1 seconds. There is no testimony other than the defendant's statement as to how fast he was traveling. *He stated* that he was going about ten miles per hour. ...... If the defendant

was traveling at the rate of ten miles per hour, he would travel 14.6 feet per second. It would, therefore, take him 33.2 seconds to have reached Sixteenth Street. The position of the southernmost safety island would reduce by fifty feet the distance the defendant would travel before reaching the point of accident, leaving approximately a distance of four hundred thirty-five feet. To cover this distance at the rate of ten miles per hour, it would have taken the defendant approximately 29.7 seconds. ......
The total width of the Parkway is approximately one hundred eighty feet. ...... Therefore, the plaintiff would have completely crossed the Parkway before the accident could have occurred." The court adds: "The incontrovertible physical facts make the occurrence of this accident impossible." The insecurity of the foundation of the position taken by the court below is that the things relied on are not *facts* and are not *physical* and are not *incontrovertible*. They are mere conjectures (as the words italicized by us show). The court *assumes* "that the plaintiff was walking at an ordinary gait." What is meant by "an ordinary gait"—"an ordinary gait" for a person in his physical prime, or "an ordinary gait" for a woman 65 years of age? There is no fact in the record showing how long it took *this plaintiff* to walk the distance from the curb to the point where she was struck. As to defendant's "traveling ten miles an hour," that is based entirely upon *his own* testimony. The credibility of that testimony was for the jury. The jury might well have found from the evidence in this case, and from the marks of impact on defendant's automobile, and from the fact that he did not know that he had struck and seriously injured a woman, that he was traveling much faster than ten miles per hour. If the jury believed that defendant was not in view when plaintiff left the curb, it might well infer from the evidence that when plaintiff left the curb defendant was beyond plaintiff's range of vision, and that he traveled from just beyond that range to the point of the accident while the plaintiff

was walking from the curb the estimated 45 feet to the same point. It is a matter of common observation that few people drive their cars on the Philadelphia Parkway for any considerable distance at the unusually slow speed of ten miles an hour. The average speed is much more likely to be thirty or forty miles an hour. A speed of forty miles an hour means traveling fifty-eight and two-thirds feet each second; a speed of thirty miles an hour means traveling forty-four feet each second. At thirty miles an hour the defendant would have covered the distance of 435 feet, referred to by the court, in less than ten seconds. At a speed of forty miles an hour, he would have covered the same distance in seven and a half seconds. Inferences such as those drawn by the court to support the entry of judgment n. o. v. are not "incontrovertible physical facts." The drawing of inferences from the testimony and from attendant circumstances is a trial jury's function.

The court below cites, as cases illustrative of the doctrine of "incontrovertible physical facts": Lamp v. P. R. R., 305 Pa. 520, 158 A. 269. That was a trespass case where the right of plaintiff to go to the jury depended upon whether or not his view down the track in the direction from which a train came, was obstructed as he said it was by a cattle train on the one track and a coal train on the other track. The civil engineer's map offered in evidence, the mathematical accuracy of which was conceded, showed that the "incontrovertible physical facts" of topography and terrain rendered worthless plaintiff's testimony on the vital point, but here the court was dealing with past rates of speed, not *present terrain*. Proof of past rates of speed necessarily depends on human testimony and on inferences therefrom.

The court below also cites the case of Bornscheuer v. Consolidated Traction Co., 198 Pa. 332, 47 A. 872, and states that the facts of that case resemble the facts of the case at bar. In that case plaintiff's own testimony was that defendant's street car was proceeding at 25 to 30

miles an hour. Taking plaintiff's own statement as to the speed of the car, this court said: "At least eleven seconds must have intervened from the time he saw it until it struck him, and in that interval, driving as he says he was—a little faster than a walk—he could not only have crossed the first track, but the entire width of the avenue, and been safely on his way to Ivy Street. The conclusion is irresistible that the witness was mistaken as to the distance between him and the car when he started to cross the tracks, and the jury should not have been allowed to believe him." With plaintiff's testimony thus discredited by the incontrovertible physical facts, he failed to make out a case free from contributory negligence. In the case before us the testimony as to speed was defendant's own and the jury was under no obligation to accept it as verity. The injuries described as having resulted to defendant's car by its impact with plaintiff's body would alone tend to negative the statement that defendant was driving only ten miles an hour at the time of the accident. Yet the court below accepted defendant's statement as to his speed as an "incontrovertible physical fact," and bases the judgment n. o. v. upon it.

The court below also cites as a supporting case, Radziemenski v. B. & O. R. R. Co., 283 Pa. 182, 128 A. 735. There plaintiff's right to go to the jury depended on whether or not her husband who had been killed by one of defendant's trains, had a clear view of the track just before he went on it. A map of admitted accuracy showed his view could not have been obstructed. Therefore, the untruthfulness of contrary testimony was demonstrated by "incontrovertible physical facts."

In Grimes v. P. R. R. Co., 289 Pa. 320, 137 A. 451, cited below, the "incontrovertible physical facts" likewise showed that the deceased could have seen the oncoming train had he looked.

In Miller v. P. R. R., 299 Pa. 63, 149, A. 85, also cited, the "incontrovertible physical facts" based upon actual

measurements showed that the plaintiff had a clear view for three-fourths of a mile in the direction whence the train came, and this proved the untruthfulness of the testimony that the plaintiff had a view for only 125 feet when 16 feet from the track, and for 300 feet when 10 feet away from the track. In all these cases the pivotal fact was the distance of plaintiff's view in the direction from which the train came. Such a fact in issue is always susceptible of mathematical proof after the event. But the question as to how fast a person walked or how fast an automobile ran is seldom, if ever, susceptible of mathematical proof after the event. Therefore the question is for the jury.

While the court below based its judgment n. o. v. on alleged "incontrovertible physical facts," thereby falling into error, it was also urged by the appellee at the argument that the plaintiff did not make out a case free from contributory negligence in that she did not show that when she proceeded across the parkway the green signal was in her favor. In his paper book appellee said with reference to the plaintiff's having a favorable signal to proceed: "The matter is left entirely to inference based upon the plaintiff's testimony that there was a green light on the traffic standard." Plaintiff did not testify exactly as this language indicates. She testified: "Traffic was against me. I stood there and there was quite a bit of traffic going by. ...... I stood there and waited. Then the green light showed. ...... The light showed green and I went on. I thought I would go to that island that is there." Clearly it is a legitimate inference from this testimony that plaintiff crossed the street only when she saw a green light which in effect beckoned to her to proceed, with the assurance that she could do so in safety. Language used by witnesses must be given its ordinary meaning. When a person states that she stood near the curb until traffic passed by and then "a green light showed," the ordinary meaning of that statement is that the green light which showed was *the green light which*

*controlled her movements at that time.* "...... As a general rule the words of a statute will be construed in their ordinary sense and with the meaning commonly attributed to them. ...... The proper course in all cases is to adopt that sense of the words which best harmonizes with the context": 25 R. C. L., page 988, section 234. This same rule applies in interpreting the testimony of witnesses. Plaintiff's testimony with reference to the green light, both by itself and by its "context" indicates that she meant she saw that green light which was a signal to her to proceed. The trial judge permitted the jury to visit the scene of this accident. The jury was, therefore, well qualified to understand just what plaintiff meant when she testified as she did about the green light showing from the position where she stood just before she left the curb.

The defendant uses language no more definite than plaintiff's when he describes the green light which he claims justified him in proceeding. He said: "I seen that the light was green before I started to cross." His wife used similar language, saying: "The light was green and we proceeded to cross. ...... Sure, the light was green." *Plaintiff's* expression was "the light showed green." These several phrases, used by the respective parties, conveyed the definite thought that the light "showed green," i. e., gave a "come-on" signal to the party whose movements were at the moment subject to it. The trial judge himself apparently had no doubt after he heard the plaintiff and when he charged the jury as to what her testimony meant. He said in his charge: "She [the plaintiff] said she looked at the signal light that was green indicating that pedestrians were at liberty to cross the street at that point." If her testimony conveyed that meaning to the trial judge, it is fair to assume that it conveyed the same meaning to the jury, as it was well calculated to do. The jury apparently accepted the statement as true and so found a verdict in favor of the plaintiff. If it rejected the plaintiff's testi-

mony and accepted defendant's testimony that the green light was in *his* favor, and if it believed *further* that the light showed green to the defendant *before plaintiff committed herself to the crossing,* the verdict should have been for the defendant.

The jury would have been justified under all the evidence in this case in drawing the inference that when plaintiff left the curb to begin the 90-foot journey to the safety island, the green light *was* in her favor and that before she reached the place of safety the automatic signal changed and that it then showed green to the defendant *when he reached the intersection.* Defendant was asked: "When did you first look at the light?" He answered: "As soon as I got to the intersection, before I started to cross." He was also asked this question and made this answer: "How far were you from the light when you last looked at it? A. I don't know how far it was, but I was pretty near right on top of it." This would support the inference that the defendant in moving across the intersection was not looking at the cartway but at the light. The fact that the defendant did not know he struck anybody until the policeman told him, also indicates that he was not attentive to the cartway. Having received a green signal (as he says he did) he should then have watched the road for persons or vehicles or obstacles in his path, for, as we said in Galliano v. East Penn Electric Co., 303 Pa. 498, 502, 154 A. 805, "A 'go' signal at a street intersection confers no authority on either a motorman or a chauffeur who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission,— i. e., a permission to proceed lawfully and carefully in the direction indicated. It does not mean that the person receiving the signal may proceed without a care or thought as to the safety of others who may be in his path."

In Giles v. Leas, 282 Pa. 318, 127 A. 774, this court said in an opinion by Mr. Justice KEPHART: "Some automobile drivers imagine this signal [at intersecting streets] gives them a clear right of way against intersecting traffic; they start their machines recklessly and rapidly regardless of persons already in the driveway, terrifying if not actually striking them. It is a common occurrence for people to narrowly escape injury because of such carelessness. This misuse of the highway is just as culpable as if the drivers were using their cars at night without lights. We have held over and over again that at street crossings drivers must be exceedingly vigilant to have their cars under such control that they may stop at the slightest sign of danger. If they do not, and an accident results, they are liable in damages for its consequences. In the crowded condition of our public thoroughfares, traffic officers cannot always clear the intersecting ways before giving a signal for vehicular traffic to move on the street that is being crossed by pedestrians. The responsibility rests with the automobile drivers to so handle their cars as not to injure those already in the street."

The inference that the signal light changed just as the defendant reached the intersection is supported also by the fact that "there was no traffic ahead of the defendant's car."

If plaintiff left the curb contrary to the traffic signal she was negligent. If defendant crossed the intersection contrary to the traffic signal or if he crossed in obedience to the qualified permission of the signal but *when* this plaintiff was in his pathway, having already committed herself to the crossing, he was guilty of negligence. In Wack v. P. R. T. Co., 93 Pa. Superior Ct. 206, the Superior Court held in an opinion by Judge KELLER that "An operator must maintain such control of his trolley car as not to run down a pedestrian crossing the street in full view even though a change of traffic is directed by an officer or semaphore." The same rule applies, of

course, to an operator of a motor vehicle. As Judge KELLER aptly said in that case, referring to a change of signals *after* a woman had started across a street: "Had she then stood still or attempted to go back her condition might have been worse; for she would have been right in the path of the trolley, or of moving automobiles traveling eastward on the north side of the track." The Superior Court there held that the questions of defendant's negligence and the plaintiff's contributory negligence were for the jury and the verdict in plaintiff's favor should not have been disturbed. We hold likewise here. In view of the fact that under a rule for judgment n. o. v. "the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence" (Guilinger v. P. R. R. Co., 304 Pa. 140, 144, 155 A. 293), the entry of judgment n. o. v. in this case was error.

The judgment of the court below is reversed and judgment is herein entered for the plaintiff on the verdict.

DISSENTING OPINION BY MR. JUSTICE KEPHART, January 15, 1934:

From my examination of the record I agree entirely with the court below that there was no testimony to disclose any negligence on the part of the defendant outside of the bare fact of the accident. Plaintiff saw a green light and started to cross the intersection, but, as appears from this record, there is not a scintilla of evidence to show that the green light she saw was the green light which invited appellant to attempt the crossing. On the contrary, there is evidence to show that the green light which she said she saw was the green light which permitted this defendant to proceed on the Parkway. The place of the accident was at the intersection of three highways, and it is possible to see the green light on the

Parkway when you are standing on the street where appellant was standing.

I would sustain the judgment of the court below.

Justice SCHAFFER concurred in this dissent.