John F. Mahan, Appellant, v. Guy A. Richardson et al., Appellees.

Gen. No. 38,344.

494

Opinion filed April 7, 1936.

CHARLES C. SPENCER and KRINSKY, LEVITAN & GLASS-
NER, all of Chicago, for appellant.

FRANK L. KRIETE, ERWIN W. ROEMER and ARTHUR J.
DONOVAN, all of Chicago, for appellees; JOHN R. GUIL-
LIAMS, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion
of the court.

An action in case, in which plaintiff sued to recover
damages for injuries sustained by him as the result of

an accident which he alleges was caused by the negligence of defendants and one Addie Cooper, the owner and driver of a motorcycle that also figured in the accident. Cooper was made a defendant, but was not served with summons and was dismissed from the case. The remaining defendants filed a plea of not guilty. At the close of plaintiff's evidence the trial court directed the jury to return a verdict in favor of defendants. Plaintiff appeals from a judgment entered upon the verdict.

"A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489." (*Hunter v. Troup,* 315 Ill. 293, 296–7.)

Plaintiff was the only witness who testified as to the accident, which happened at approximately 10 a. m., September 12, 1931, at the intersection of Clark and Adams streets, one of the busiest intersections in Chicago. Plaintiff, at the time of the accident, was a practicing attorney. Prior to 1914 he had been "employed in athletic work, college and university athletic work, for about twenty-one years." For a considerable period of time he had also acted as physical director at the Illinois Athletic Club. Tested by the rule stated in *Hunter v. Troup, supra,* plaintiff's testimony

tends to prove the following facts: On the morning of September 12 plaintiff was on his way to the general post office, located at the southeast corner of Clark and Adams streets, to send a legal document by special delivery. It was "a dry ordinary September day." Clark street runs north and south, and Adams street east and west, and there are street car tracks in both streets. Adams street, from curb to curb, is 37 feet, 10 inches wide. Clark street, from curb to curb, is 47 feet, 8½ inches wide. The car tracks in Adams street "occupy fourteen feet, eleven inches." Plaintiff had proceeded southward on the east side of Clark street and as he approached Adams street to make the crossing he looked and saw that the north and south traffic light was green. He testified that when the north and south light is green the light which controls traffic going east and west on Adams street is red, which requires the east and west traffic to halt; that he paused at the curb half a second and as the north and south light still showed green he then proceeded to cross Adams street on the crosswalk; that the westbound traffic on Adams street was then lined up on his left on the north side of Adams street; that when he went on the crosswalk the green light was still in his favor and the traffic was still "running" north on Clark street; that when he got about between the westbound and eastbound tracks on Adams street the last northbound vehicle on Clark street, a truck, had just passed a point about parallel with him; that at that moment an eastbound street car, running at a speed of about 15 miles an hour, suddenly came from behind the truck at such a rate of speed that it was almost instantly on top of him; that by that time the westbound traffic on Adams street had started to move behind him and that the only chance for safety that he had was to run toward the southeast; that he started running southeast at a very small angle and when he reached a point midway between the tracks and the

sidewalk line he came in contact with the front of an eastbound motorcycle and was knocked down; that the motorcycle was traveling alongside the south side of the street car and "was running along the middle of that roadway about the center of it"; that the street car had not entirely passed him before he was struck by the motorcycle; that he never saw the motorcycle until he came in contact with it; that *"those things all happened together"*; that as he was proceeding south over the crosswalk he could not see the eastbound traffic because of the northbound traffic; that the street car "popped out from behind the traffic and I saw it and had to run for my safety"; that as he approached the corner of Adams and Clark streets there was no policeman at the intersection, but five minutes after the accident one came to where he was; that there were four lights, or light posts, that controlled the traffic at that intersection; that the lights show green and red, with an amber light between the two; that he subsequently tested the time it takes to change from one color to another at that corner and that during the period from the green light back to the red is 34 seconds; that two seconds are taken up by the amber light; that all of the lights operate at the same time, and when the north and south lights are green the east and west lights are red, and when the north and south lights are amber the east and west lights are also amber; that he heard no sound made by the street car as he proceeded southward across the street; that he was walking about three miles an hour until he reached the center of the street. He sustained serious injuries.

At the conclusion of the examination of plaintiff by counsel for both sides the trial court cross-examined plaintiff at considerable length, in the hearing of the jury, and it is quite apparent from the questions asked that the court was of the opinion that he was not entitled to recover. When plaintiff rested the court made the following statement: "I don't think there is any

negligence on the part of the defendant, and I think that this accident happened through your own conduct.''

We shall first pass upon the following contention of defendants: ''After all danger of injury by the street car had passed, an independent force intervened and together with plaintiff's voluntary action, caused the injury. The operation of the street car was not the proximate cause even though the injury would not have occurred were it not for such operation.'' While the record fails to show that this point was made in the trial court, nevertheless, defendants argue, as they have a right to do, that if upon a consideration of the whole record we find that the judgment is correct, it is immaterial upon what grounds the trial court based its action. The law that governs the instant contention is stated at length in the well known case of *Seith v. Commonwealth Electric Co.*, 241 Ill. 252, 259–261:

''The rules for determining whether a negligent act or omission is the proximate cause of an injury are well established and have been applied by different courts in numerous cases to different conditions of fact. There has been practically no difference of opinion as to what the rules are, and they may be briefly stated as follows: The negligent act or omission must be the cause which produces the injury, but it need not be the sole cause nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, causes the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous sequence, unbroken by any new or independent cause. The question is not determined by the existence or non-existence of intervening events, but by their character and the natural connection between the original act or omission and the injurious conse-

quences. To constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence. It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury, but when it occurs it must appear that it was a natural and probable consequence of his negligence. If the negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the two are not concurrent and the existence of the condition is not the proximate cause of the injury. Where the intervening cause is set in operation by the original negligence, such negligence is still the proximate cause, and where the circumstances are such that the injurious consequences might have been foreseen as likely to result from the first negligent act or omission, the act of the third person will not excuse the first wrongdoer. When the act of a third person intervenes which is not a consequence of the first wrongful act or omission and which could not have been foreseen by the exercise of reasonable diligence and without which the injurious consequence could not have happened, the first act or omission is not the proximate cause of the injury. The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and if so, the connection is not broken; but if the act of the third person which is the immediate cause of the injury is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the first act or omission, the connection is broken and the first act or omission is not the proxi-

mate cause of the injury. One phase of the rule was stated in *Chicago Hair and Bristle Co. v. Mueller*, 203 Ill. 558, as follows: 'If the negligent act and the injury are known, by common experience, to be usual in consequence, and the injury such as is liable, in the ordinary course of events, to follow the act of negligence, it is a question of fact for the jury whether the negligence was the proximate cause of the injury'; . . . The Supreme Court of the United States, in the case of *Milwaukee and St. Paul Railroad Co. v. Kellogg*, 94 U. S. 469, said: 'The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?' ''

Tested by the above rules it is plain that the instant contention cannot be sustained. The facts in the cases cited by defendants differ materially from the facts in the instant proceeding.

Plaintiff contends that the court was not justified in holding, under the facts and circumstances in evidence, that plaintiff had failed to make out a *prima facie* case, and that it erred in instructing the jury to find defendants not guilty. After a careful consideration of the testimony of plaintiff we have reached the conclusion that the instant contention is clearly a meritorious one. We are at a loss to understand upon what theory of fact or law the court based its ruling. There are certain established rules of law that apply to a situation like the one present in the instant case:

In *Griffith v. Slaybaugh*, 29 F. (2d) 437, the Court of Appeals of the District of Columbia said (p. 439):

''The condition of traffic in our crowded streets is such that travel by pedestrians is at best difficult and dangerous. If their absolute right to enter upon a

crossing when the signal permits it is not sustained, they would be almost without protection. Entering under this invitation, they cannot be charged with contributory negligence, if the signal switches when they are in the street. Caught in this position, the obligation rests upon the drivers of automobiles, not only to observe the situation, but to wait until the crossing is clear. Many automobile drivers seem to imagine that with the shift of the signal they are given a clear right of way against intersecting traffic. In this belief they recklessly start their machines, regardless of persons who are already rightfully on the intersection. It is the duty of drivers of machines to exercise the greatest vigilance and care under such circumstances, not only to have their machines under control, but to stop and wait until pedestrians have had an opportunity to clear the crossing. Failure to observe these precautions constitutes negligence on the part of the driver, which in case of accident is chargeable against him.''

The court further said (p. 438):

''Plaintiffs entered the crossing while the green signal light was displayed, and having committed themselves to the crossing, they had the right of way until they could reach the opposite curb. As said in *Riddel v. Lyon*, 124 Wash. 146, 213 P. 487, 37 A. L. R. 486:

'' 'We must hold that one entering the street intersection under the direction of the traffic officer has the right of way and this right of way continues until he reaches the other side of the street, and the fact that the semaphore was changed, giving the traffic in the other direction notice to proceed, does not give them the right of way over the one first entering the street crossing, and the one first entering has the right to presume that he can pass over in safety and is not required to exercise continuous and extra observation to avoid vehicles using such street.'

"This is a clear expression of the law as announced in many cases touching the right of way of pedestrians at crossings controlled either by a traffic officer or signals. *Quaker Cab Co. v. Fixter* (C. C. A.), 4 F. (2d) 327; *Gilles v. Leas,* 282 Pa. 318, 127 A. 774."

In *Schatz v. Kehoe,* 15 La. App. 9, 131 So. 66, the Court of Appeals of Louisiana said (p. 68):

"Of course, even though the green light gave to defendant the right to enter the intersection, it did not give him the right to cross without permitting pedestrians already on the roadway ahead of him time to complete their crossing. *Crews v. Coogan,* 7 La. App. 692; *Harrison v. Loyocano,* 12 La. App. 228, 125 So. 140."

In *Raabe v. Brzoskowski,* 204 Wis. 319, 236 N. W. 133, the Supreme Court of Wisconsin said (p. 134):

"There is ample evidence in the record to sustain a finding that the plaintiff started south on the west crossing of North avenue at a time when the light was clearly in her favor; that she reached a point somewhere between the south track and the south curb of North avenue before the light changed to amber; and that she was struck by the truck while completing the crossing. There is evidence from which the jury could have found that the defendant started east on the south side of North avenue before the green light turned in his favor, probably at or about the time the light changed to amber, without permitting the traffic then properly on North avenue to clear. Plaintiff rightfully entered the street. In doing so, she had a right to assume that vehicles proceeding east on the south side of North avenue would give traffic properly upon Third avenue an opportunity to clear."

In *Ferguson v. Charis,* 314 Pa. 164, 170 Atl. 131, the Supreme Court of Pennsylvania said (p. 134):

"If plaintiff left the curb contrary to the traffic signal, she was negligent. If defendant crossed the inter-

section contrary to the traffic signal or if he crossed in obedience to the qualified permission of the signal but *when* this plaintiff was in his pathway, having already committed herself to the crossing, he was guilty of negligence. In *Wack v. Philadelphia R. T. Co.*, 93 Pa. Super. Ct. 206, the Superior Court held, in an opinion by Judge Keller, that 'An operator must maintain such control of his trolley car as not to run down a pedestrian crossing the street in full view even though a change of traffic is directed by an officer or semaphore.' The same rule applies, of course, to an operator of a motor vehicle. As Judge Keller aptly said in that case, referring to a change of signals *after* a woman had started across a street: 'Had she then stood still or attempted to go back her condition might have been worse; for she would have been right in the path of the trolley, or of moving automobiles traveling eastward on the north side of the track.' The Superior Court there held that the questions of defendant's negligence and the plaintiff's contributory negligence were for the jury and the verdict in plaintiff's favor should not have been disturbed. We hold likewise here. In view of the fact that under a rule for judgment n. o. v. 'the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence' (*Guilinger v. Pennsylvania R. Co.*, 304 Pa. 140, 144, 155 A. 293, 294), the entry of judgment n. o. v. in this case was error.'' (See also *Clarkson v. Clark,* 25 Ohio App. 377, 157 N. E. 910.)

We are, of course, in full accord with the just and necessary rules of law stated in the foregoing cases. Without such rules, highly dangerous and intolerable conditions would often prevail at busy street inter-

sections in our great cities, and the careful pedestrian would be frequently deprived of a reasonable opportunity to make a crossing.

The mere fact that defendants' car did not come in contact with plaintiff does not absolve them from responsibility for the accident. Under the facts the jury would have been fully warranted in finding that the negligence of defendants and the negligence of the driver of the motorcycle were, in combination, the proximate cause of the injury to plaintiff.

Defendants ignore the fact that plaintiff was rightfully upon the street and had, therefore, the right of way until he reached the opposite side, and that defendants' negligence, alone, placed him in a position of danger, and they have seen fit to argue that plaintiff's conduct, after he "reached the zone of safety from the street car," amounted to contributory negligence; that after plaintiff escaped contact with the street car he should have seen the motorcycle in time to avoid it. As has often been stated by our Supreme Court, there is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger, and that the only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances; that if a person is momentarily paralyzed or confused by imminent danger and he does nothing, or takes a step or two in the wrong direction, and a collision results, it cannot be said, as a matter of law, that he acted in a manner different from that which might have been expected of a man of ordinary prudence. In the instant case the jury would have been fully warranted in finding that plaintiff took the best course open to him to reach a place of safety. In any event, it was for the jury to determine whether plaintiff, under all the circumstances, exercised ordinary care for his own safety.

In our judgment it would be a gross injustice to plaintiff to permit the instant judgment to stand.

The judgment of the superior court of Cook county is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

SULLIVAN and FRIEND, JJ., concur.