289 F.2d 473
 MELLON NATIONAL BANK & TRUST COMPANY, Executor of the Estate of Jacob Casale, Deceased, as Interveners, Hardware Dealers Mutual Insurance Company, Phoenix Insurance Company, Old Colony Insurance Company, Dubuque Fire & Marine Insurance Company, Hartford Fire Insurance Company, Northern Insurance Company, Northwestern National Insurance Company, St. Paul Fire & Marine Insurance Company,
v.
SOPHIE LINES, INC., a corporation, Turner Transfer, Inc., a corporation, and the Baltimore & Ohio Railroad Company, a corporation.
Emily PETERNAL and Joseph Peternal, her husband,
v.
SOPHIE LINES, INC., a corporation, and the Baltimore & Ohio Railroad Company, a corporation.
Kenneth F. FRIES and Janice A. Fries, his wife, and Kenneth F. Fries, trading and doing business as Fries Electric and Hardware, and Hardware Dealers Mutual Insurance Company, a corporation,
v.
SOPHIE LINES, INC., a corporation, Turner Transfer, Inc., a corporation, and the Baltimore & Ohio Railroad Company, a corporation.
Belva ROSS and J. William Ross, her husband,
v.
SOPHIE LINES, INC., a corporation, Turner Transfer, Inc., a corporation, and the Baltimore & Ohio Railroad Company, a corporation.
J. William ROSS, Administrator of the Estate of Cheryl Faye Ross, deceased,
v.
SOPHIE LINES, INC., a corporation, Turner Transfer, Inc., a corporation, and the Baltimore & Ohio Railroad Company, a corporation.
HARTFORD FIRE INSURANCE COMPANY
v.
SOPHIE LINES, INC., a corporation, Turner Transfer, Inc., a corporation, Defendant-Appellant.
Edmund WHITEMAN, Administrator of the Estate of Dora Whiteman, deceased,
v.
SOPHIE LINES, INC., a corporation, Turner Transfer, Inc., a corporation, and the Baltimore & Ohio Railroad Company, a corporation, Turner Transfer, Inc., a corporation, Defendant-Appellant.
 Nos. 13362-13368.
 United States Court of Appeals Third Circuit.
 Argued January 13, 1961.
 Decided April 5, 1961.
 
 H. A. Robinson, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for defendant-appellant.
 James P. McArdle, Pittsburgh, Pa. (Gene K. Lynch, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellees.
 Before GOODRICH, McLAUGHLIN and FORMAN, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 In this collision between a tractor-trailer (truck) and a freight train, our problem is whether the lessee of the tractor-trailer was responsible for its operation at the time. From the stipulated facts the following appears.
 
 
 2
 The truck was owned by Sophie Lines, Inc., operated by its employee and leased to Turner Transfer, Inc. The latter is a licensed I.C.C. carrier with operating permits limited to the carrying of certain knitting equipment for the areas involved. The owner did not have an I.C.C. permit.
 
 
 3
 On September 24, 1955 there was a thirty day written lease entered into between the owner and Turner. The lease, as called for by I.C.C. Rule Ex Parte No. MC-43, 49 C.F.R. 207.4 et seq., contained the following:
 
 
 4
 "It is understood that the leased equipment under this Agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the Interstate Commerce Commission."
 
 
 5
 Under the lease the truck and its driver were transferred to the exclusive control of Turner. The collision occurred October 4, 1955, within the period of the lease.
 
 
 6
 On September 29, 1955, the truck, later in the collision, left Reading, Pennsylvania with half a knitting machine to be delivered at Concord, North Carolina. On the way, the truck stopped at Greensboro, North Carolina, to arrange with the Turner dispatcher at that station for riggers to be on hand at Concord. The dispatcher instructed the driver to proceed to Henderson, North Carolina, a terminal for Sophie Lines, Inc. and to remove the Turner Transfer decals from the side of the truck since there was no immediate need of the truck. Turner had expected sending the truck with others to Amsterdam, New York, to bring a knitting machine back to North Carolina but Sophie Lines had not obtained New York authorization for the truck. The latter was unloaded at Concord and then driven to Henderson where the driver advised the Sophie Lines secretary that Turner had no present use for the truck. The secretary talked with the Taylor-Thayer Lumber Company as to whether that concern needed a truck. It did, so the truck was sent to its plant and there loaded with lumber destined for Elizabeth, Pennsylvania. En route to that place, at West Newton, Pennsylvania, it was in the collision with the freight train as above mentioned. Turner was not notified nor had any knowledge that the truck was to haul lumber for Thayer-Taylor into Pennsylvania at that particular time.
 
 The stipulation goes on to say:
 
 7
 "There was knowledge on the part of Turner Transfer that in the past, in order to avoid an empty trip or deadhead, Sophie had directed this truck to haul lumber of Taylor-Thayer Lumber. Sophie had no ICC permit permitting such haulage nor did Taylor-Thayer Lumber. The permits issued Turner Transfer, Inc. did not authorize any haulage of lumber in Interstate Commerce. Regardless of the lack of ICC authority Sophie Lines, Inc. had, previous to the execution of the lease with Turner Transfer, hauled lumber for Taylor-Thayer Lumber Company on thirteen different occasions prior to the execution of the lease, from March 1955 up to and including September 22, 1955. Subsequent to the execution of the lease Sophie Lines transported lumber for Taylor-Thayer on September 27, 1955. It was for all of these previously named unauthorized haulings that the Interstate Commerce Commission instituted a proceeding in the U. S. District Court for the Eastern District of North Carolina, which action was the United States of America v. Sophie Lines, Inc., a corporation, and Brooks Harris (the president and owner of Sophie Lines) at No. 9763 Raleigh Division, and in which the named parties were convicted."[1]
 
 
 8
 "Both Sophie Lines and Turner Transfer, as previously indicated, had intended that as soon as Sophie Lines received authorization for this truck to transport in New York State the truck would be used by Turner to transport knitting equipment from New York back to North Carolina. On the day of the accident in fact, the owner of Sophie Lines was completing arrangements for this truck as well as several others of his to proceed to Amsterdam, New York, for this purpose."
 
 
 9
 At the trial there was testimony in the plaintiff's case by an eye witness to the accident that Turner decals were found pasted on the side of the truck cab. The trial court found it to be undisputed that "At the time of the accident, possession of the equipment had not been surrendered to Sophie Lines nor had any receipts been given for the surrender of possession of the equipment. Decals stating `Leased to Turner Transfer, Inc.' were found near the cab of the truck. Sophie Lines did not have an I.C.C. permit to make the trip in question and a decal carrying the I.C.C. permit number issued to Turner Transfer, Inc., was fastened to the side of the equipment." There was a copy of the referred to lease inside the cab. No receipts showing termination of the lease in accordance with the I.C.C. Rules and Regulations were given Turner from Sophie Lines.
 
 
 10
 The trial court ruled as a matter of law that Turner Transfer, Inc. was liable for the operation of the truck at the time of the accident and did not submit that question to the jury. It is from that decision the appeals are had.
 
 
 11
 Appellant's contention is that under the facts it is not answerable as a matter of law for the operation of the truck. It urges that it is a jury question whether the actual operation made Turner responsible for the negligence of the driver.
 
 
 12
 As is seen from the quoted language of the stipulation, Turner had knowledge of previous lumber hauling trips by Sophie Lines to avoid empty trips. Turner profited from that practice in instances where a truck carried a load while en route to pick up Turner freight. The sixteen cents charge per mile for an empty truck against it was eliminated thereby.
 
 
 13
 So we have that at the time and place of the accident the truck was under a lease which put exclusive possession, use and control during the thirty day period in Turner. Without the lease, at the moment of the accident the truck had not even a semblance of excuse to be on the road. There was a copy of the lease in the cab of the truck as required by I.C.C. Rules Ex Parte MC-43, 207.4(7). In addition Turner decals were on the cab together with the Turner I.C.C. permit number and no receipt showing termination of the lease had been given by Sophie Lines to Turner.
 
 
 14
 In those circumstances Turner came directly within the governing I.C.C. Rule, Section 207.4. The truck at the time was under a properly I.C.C. authorized lease to Turner with the latter assuming full responsibility for its operation to the public, the shippers and the I.C.C. Turner could have effectually eliminated its responsibility for the truck's use in only one way i. e. (1) removing "* * * any legend showing it as the operating carrier, displayed on such equipment and * * * any removable device showing it as the operating carrier, before relinquishing possession of the equipment." (Section 207.4 (d) (1)); and (2) obtaining the receipt called for by 207.4(7) (b) which latter reads: "* * * when the possession by the authorized carrier ends, it or its employee or agent shall obtain from the owner of the equipment, or its regular employee or agent duly authorized to act for it, a receipt specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken." It failed to do this.
 
 
 15
 It is stipulated that the Turner dispatcher at Greensboro told the driver to go to the Sophie Lines Henderson Terminal and remove the Turner decals as there was no immediate use for the truck. The driver drove the truck to Henderson but did not remove the decals. The record is silent of any check on this by Turner, any instruction by Turner to Sophie Lines at Henderson regarding it, warning to Sophie Lines not to use the truck with the Turner lease aboard and the Turner decals on a side of the cab. Effort of that sort might offer some explanation for Turner's present position though we do not think it would be sufficient under the certain directives of 207.4 (d) (1) and 207.4(7) (b). It will be remembered that the driver according to the lease was exclusively controlled by Turner. That same driver would seem to have driven the truck to Taylor-Thayer, picked up the lumber and was on his way to deliver it at the time of the collision. The fact that Turner was familiar with Sophie Lines hauling lumber to avoid empty trips and did profit to some extent from that source does suggest acceptance of the practice and a reason for no follow up of the instruction to the driver. It is however of no basic importance to the question before us.
 
 
 16
 Appellant's argument is, as has been stated, that whether Turner was responsible for the operation of the truck should have been left to the jury. It cites two cases, the first of which holds that the drawing of inferences from the testimony and from attendant circumstances is a function of the jury. Ferguson v. Charis, 1934, 314 Pa. 164, 170 A. 131. In the second, Guilinger v. Pennsylvania R. R., 1931, 304 Pa. 140, 155 A. 293, the question of whether the plaintiff was guilty of contributory negligence under the facts in that action was peculiarly one to be determined by the jury in the light of all the circumstances. Appellant makes no mention of the Interstate Commerce Commission strict operational rules or any real suggestion of how their self-evident impact can possibly be avoided. It does insist as its major theme that what happened in the present instance is no different than "* * * where a thief takes a truck from the possession of Turner Transfer, Inc. or Sophie Lines, Inc. and drives it on his own business." Actually there is no true similarity. If it were shown that a thief had stolen the truck while it was being properly operated for Turner under the I.C.C. Rules and thereafter was in an accident with it, etc. of course there would be no conclusive presumption that the truck was on Turner's business. But there was no theft. It was Turner's conduct which allowed the truck to make the trip into Pennsylvania with its decals and its lease.
 
 
 17
 In Hodges v. Johnson, D.C.W.D.Va. 1943, 52 F.Supp. 488, 490-491 the court faced a comparable situation and held:
 
 
 18
 "Therefore, it is my conclusion that public policy requires that the holder of a franchise or certificate from the Interstate Commerce Commission for the operation of freight vehicles in interstate commerce upon the public highways be held responsible for the operation of such vehicles under said franchise or certificate, by independent contractors of such certificate holders, their servants and agents. Otherwise, the public might be entirely deprived of the safeguards to the public required by the Interstate Commerce Commission, by means of certificate holders evading their responsibility by the employment of irresponsible persons as independent contractors."
 
 
 19
 The court there at page 490 emphasized "* * * that one of the principal purposes, if not the primary purpose, of these regulatory laws is the protection of the traveling public upon the highways." Cf. American Trucking Ass'ns v. United States, 1953, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337. The stipulation before us itself quotes the mandatory provision of the lease which puts the lessee's responsibility to the public first.
 
 
 20
 The trial judge from the facts and with the Turner lease effective under and controlled by Section 207.4 of the Interstate Commerce Commission Regulations, rightly held that appellant was responsible for any negligence on the part of the driver of the leased equipment.
 
 
 21
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 Other than to point up the misuse of the truck during the critical period, the circumstance that the I.C.C. charges named only Sophie Lines and Harris its president does not help Turner's position in these suits. Turner in not picking up its decals and lease and in not obtaining a receipt for the termination of its lease enabled the truck to be on the road with the appearance of legality. There is nothing in the stipulation or the oral testimony from which inference can be had that the truck would have been permitted to make the Pennsylvania trip absent the Turner lease and decals