## Baker *versus* King.

1. An application for land is not an inception of title until it is filed in the land office and the office fees and purchase-money paid to the Commonwealth.

2. A person had an application made out for land, and afterwards *on the same day* another person had an application prepared for the same land, and whilst about having it prepared, he was informed of the previous application; the application of the second person was *first* filed in the land office: *Held*, that if there was no fraud or deception on his part, his warrant was entitled to prevail over the warrant issued on the application *first* prepared but *last* filed.

3. It was a material circumstance in favor of the title of the plaintiff in the ejectment, that he was a *bonâ fide* purchaser of the warrant first issued, and had received a deed from the warrantee after a decision in favor of such warrant by the Board of Property on a caveat filed by the second warrantee, in which the latter claimed by virtue of an actual settlement, but without referring to his warrant, and that the plaintiff was without notice of claim under the warrant last issued or of the preparatory writings to obtain a warrant.

4. A warrant for unimproved land gives to the owner of it a constructive possession of the land which will enable him to maintain *trespass* for digging ore upon it, against one who has not an actual adverse possession of the land.

ERROR to the Common Pleas of *Indiana county*.

This action of trespass was brought by Elias Baker against George S. King and others, to recover damages for an alleged breaking of plaintiff's close, digging up and carrying away a large quantity of iron ore.

The plaintiff claimed under a warrant to *Wm. D. McKirnan*, dated *sixth* August, 1844, and a survey made on said warrant, dated 10th of August, and 13th and 14th of Sept. 1844, for 59 acres, 137 perches, covering the land where the alleged trespass was committed.

The defendants claimed under David Stewart, who took out a warrant for the same land on the *seventh* of August, 1844. Applications to the land office for the warrant were prepared for both Stewart and McKirnan, on the 3d of August, 1844. Stewart had his made out in the morning, and McKirnan had his prepared in the evening of that day. Stewart entered a *caveat* against the acceptance of the McKirnan survey, alleging that the right to the land was vested in him by virtue of an actual settlement, commenced about the year 1822, but his warrant was not mentioned.

[Baker *v.* King.]

On the 2d of March, 1846, a decision of the "Board of Property" was made in favor of the acceptance of the McKirnan survey, and on the 5th of December, 1846, McKirnan conveyed his interest in the land to Elias Baker, the plaintiff, and upon this title Baker sought to recover.

The defendants resisted the plaintiff's recovery, on the ground that the right to the land was vested in them by an actual settlement made at an early day; that they had purchased this claim from a certain *Samuel Mizener*. They also offered in evidence, the warrant to David Stewart, dated 7th August, 1844, for fifty acres of land, adjoining other lands of Stewart bought from Samuel Mizener, land of Thomas Clark, Catherine and John Davis, unimproved. The warrant was endorsed, executed, and came to hand 29th August, 1844, and was surveyed by Robert Magee, Deputy Surveyor, on the 15th and 16th of December, 1848, to King and Shoenberger, for 49 acres and 24 perches. They proved a sale *by Stewart to the defendants* of the land in dispute, on the 20th Nov. 1846. The defendants further showed the record of an action of ejectment, brought by David Stewart against William D. McKirnan and Elias Baker, in the Common Pleas of Indiana county, issued 3d of April, 1846, which was served on McKirnan 3d July, 1847.

The plaintiff's counsel offered the duplicates of Brushvalley township in evidence, to show that *Mizener*, under whom the defendants claimed, for the years 1837, 1838, 1839, and 1840, returned to the assessor for taxation, only 110 acres of land, and for the years 1841, 1842, and 1843, 262 acres, and for the year 1844, 250 acres, which was transferred from Mizener to David Stewart. It was alleged that the whole survey, including the improvement and the part on which the warrant was laid, contained 325 acres, and allowing the 250 acres transferred by Mizener to Stewart, to be held by improvement, it left a sufficient quantity of land outside of this 250 acres to be appropriated by the McKirnan warrant, without interfering with the Mizener improvement. This position was sustained by the description given by Stewart in his warrant of the 7th August, 1844, as he described the land in the warrant as adjoining other lands of him the said Stewart, purchased from Samuel Mizener. From these facts, it was contended, that Stewart could not hold this land, by virtue of the Mizener improvement, as well as from evidence, showing, that at the time McKirnan made his survey, Mizener, who was along with the surveyor, showed his lines, and that the land from where the ore was taken, was not within his claim.

The evidence further showed, that at the time McKirnan was taking out his application for the land in dispute, he was told that on that day Stewart had taken out an application for the same land, and that he was ahead of him, and *his* would be of no avail.

McKirnan replied that he would try and get to the land office before Stewart, and get his warrant first, which he did.   On this point, which was the subject of the third proposition submitted on .the part of the defendants, KNOX, J., instructed the jury, if they believed that Wm. D. McKirnan, at the time he made his application, knew that David Stewart had already made an application for the same land, that he, McKirnan, acquired no right by his application, in hastening to the land office with his papers, in advance of Stewart.   The evidence did not show that McKirnan had any knowledge of Stewart making an application for this land, until he, McKirnan, went to make his own application, and he was then told, that on the same day Stewart had an application prepared for the same land.

To the fourth point submitted on the part of the defendants, the Court instructed the jury, that the warrant in the name of Stewart was a descriptive warrant, and gave title 'from its date, and the circumstance of no survey being made thereon for four years, would not invalidate the title or right acquired under said warrant ; and more especially, if the jury find that the warrantee had actual possession of the land described in the warrant, and exercising acts of ownership over it.

The Court further instructed the jury, that if the defendants were in actual possession at the time the ore was dug, they were entitled to a verdict without regard to title.   If they were not, then the possession would follow the title, with regard to which we have given specific instructions in our answer to the defendants' points.

The second point submitted, and the answer was as follows :

"If the jury believe that the plaintiffs were not in actual possession of the land in dispute, at the time of the alleged trespass, but that the defendants were in possession thereof, using the same, and claiming to be the owners thereof, then the plaintiff cannot maintain this action."

This point is substantially correct.   The plaintiff must show, in order to sustain his action, that he was in the actual or constructive possession of the land in dispute.   If the plaintiff was the rightful owner of the land, and there was no adverse possession, he would have sufficient possession to enable him to maintain trespass, even although he may not have been in the actual occupancy of the tract ; but if there was at the time such adverse possession existing ·in the defendants, then this action cannot be sustained. Whether there was such adverse possession, is a question for the jury.   Was the land in dispute embraced in the Bracken claim ? Did Bracken or Mizener sell it to Stewart, and Stewart to King and Shoenberger, and were they using it *under the claim of title* ? If so, they must be considered as having the actual possession ; but if it was not so transferred to them, a mere entry upon the

[Baker *v.* King.]

tract for the purpose of making roads, digging ore, &c., would amount to nothing more than repeated trespasses against the real owner, and would not destroy his possession.

Verdict was rendered for the defendants.

It was assigned for error that the Court erred in their answer to the second, third, and fourth points; and in charging the jury that if the defendants were in the actual possession at the time the ore was dug, they were entitled to a verdict without regard to the title.

*Foster* and *Stewart*, for plaintiffs in error.

*Cowan* and *Banks*, contrà.

The opinion of the Court was delivered, Oct. 23, by

CHAMBERS, J.—The plaintiff, in support of this action of trespass for breaking his close, and digging and carrying away a large quantity of iron ore from a tract of unimproved land, gave in evidence a warrant to Wm. D. McKirnan, dated 6th August, 1844, with a survey made in Sept. 1844, for 59 acres 137 perches, embracing the land on which the alleged trespass was committed. David Stewart, under whom defendants claim, took out a warrant for the same land on the 7th August, 1844. It is in evidence that the written preparatory applications to be presented to the land office, were written with the certificates of the justices in the county of Indiana, on the 3d of August, for McKirnan and Stewart, Stewart having his prepared in the morning of that day, and McKirnan in the evening, when he was made acquainted with the intended application of Stewart, prepared earlier on the same day. Stewart entered a caveat against the acceptance of the survey of McKirnan, alleging that the right to this land was in him by virtue of an actual settlement, commenced in 1822, and without claiming under his warrant of the 7th August. The Board of Property, on the 2d March, 1846, decided in favor of the acceptance of the survey of McKirnan, who, on 5th of December, 1846, conveyed by deed to Elias Baker, the plaintiff. The defendants claimed under the said warrant to Stewart, which did not call for any improvement, and was reasonably descriptive of the land in controversy; and gave in evidence an ejectment brought by Stewart, pending against McKirnan in April, 1846; a conveyance by Stewart to the defendants on 20th November, 1846; and a survey made for them by the deputy surveyor in December, 1848, for 49 acres and 24 perches.

The Court, in reply to the *third* point submitted on part of the defendants, instructed the jury, if they believed that McKirnan, at the time he made his application, knew that Stewart had

[Baker *v.* King.]

already made an application for the same land, that he acquired no right by said application, in hastening to the land office, with his papers in advance of Stewart. This instruction is now assigned for error by the plaintiff.

The grants of land by this Commonwealth to individuals are founded on written applications describing the land; and if founded on a settlement, must state when the improvement commenced, with the oath of the applicant that no other office right had been issued for the same, under which he claimed title, with the certificate of two justices. This is the requisition of the law, for the protection of the Commonwealth in its claim of interest on the purchase-money. The preparation of the intended application is in the country before two justices, and is the act of the individual, under his control, *in fieri*, forming no contract or an inception of title until filed in the land office, and the office fees and purchase-money paid to the Commonwealth. Where there is an antecedent settlement, if prosecuted and continued, it constitutes an inception of title, to be regarded and protected from its commencement. This species of title is, from necessity, to be established by parol; and as it consists of acts done on the ground, visible, permanent, and notorious, which are notice to the neighborhood as well as inquirers, the public, applicants, or purchasers, need not be misled by reasonable vigilance. If an individual should take out a warrant for land thus appropriated by the settlement right of another, it is at his peril; and if in ignorance of the prior right, that ignorance will be intended to be wilful, and will afford him no equity. Public policy and the security of title require that the origin of title from the Commonwealth should not depend on parol evidence, except in cases of settlement right, where it is *ex necessitate rei*. In case of an improvement, the first stroke of the ax, or other act on the ground, determines the residence, if prosecuted with diligence. A party having it in contemplation to apply to the land office for a warrant, may have his written application prepared in the county of his residence, and use or withhold it as he may think proper. It constitutes in itself no contract, but an intended application for a grant unknown to the officers of the Commonwealth until it is filed.

Is another individual, who on the same day has his intended application prepared in writing for the same land, to be kept at bay because another had an hour before prepared a like application, and of which the second was only informed when he was having his prepared? The Commonwealth can know nothing of this priority of preparing the intended applications between individuals at a distance. It may be before different justices, and at places remote from each other. But it is alleged that one who is making his preparations to apply for the land, and while in the act of doing it is informed that another has on the same day had a like

[Baker *v.* King.]

application prepared, is acting *malâ fide* in pursuing his application any further for the same land. Both individuals were bound to know that the writings prepared bound neither of them; they might be pursued or abandoned at their pleasure.

In such case, we think, if there was not fraud or deception, the application first filed in the land office constituted the inception of title; *that* should obtain the first warrant and prevail between the parties, and would be a proper application of the maxim, "*vigilantibus non dormientibus leges subserviunt.*"

An improvement made or a warrant obtained for land, with actual knowledge of even an imperfect and unreturned survey of the same land on a shifted warrant, will be postponed, though there is no contract between the state and the holders of such survey before the return: Keble *v.* Arthurs, 3 *Bin.* 29. Yet in such case, the improver or holder of the junior warrant is bound to know the usage of the land office in allowing the shifting of warrants and the acceptance of the surveys made on them, where they did not conflict with the rights of others, acquired before a knowledge of such survey. The survey made on such shifted warrant is by a surveyor who is a public officer and the agent of the state, whose office would furnish the information to any who desired it of the appropriation of the land by a survey on the ground, to satisfy the shifted warrant.

A conflict between an improver and the holder of a warrant as to priority in the origin of their respective titles, may, from the nature of the title, call for parol evidence to establish the precedence, and with respect to which we do not impugn the decision of this Court on that point in the case of Mix *v.* Smith, 7 *Barr* 75. In that case, the improvement was commenced three days after the proposed application and jurat before the justices, and with the knowledge of the improver that there was such application for what was vacant land, and in respect to which the conduct of the settler under the circumstances was surreptitious. But we do not feel disposed to carry the principle there adopted any further, or extend it to a conflict of paper title, attested by warrants of different dates, the evidence of priority of title in which is that furnished by the records of the land office, and without making that priority dependent on parol evidence of precedence in their measures of preparing their intended applications in the country, or in the degree of knowledge which one may have had of the intention of the other. In such conflict between warrant-holders, not claiming under an antecedent improvement, the safest rule for the security of title and to avoid litigation, is not to go behind the dates of the warrants and open a door for parol evidence, the tendency of which would be to unsettle the priority of official grants, as well as all reliance on them as evidence of title.

In this case, there is a material circumstance in evidence in

[Baker *v.* King.]

favor of the title of the plaintiff that was not regarded or noticed by the Court below, that he was a *bonâ fide* purchaser of the McKirnan warrant and title, and for which a deed was made to him after the decision of the Board of Property against the claim of Stewart, and without any notice of claim under the warrant to Stewart, or in the preparatory writings to obtain said warrant.

The plaintiff had, under the McKirnan warrant and survey, a title prior and better than that derived by defendants under the warrant to Stewart; and the former warrant gave to the plaintiff a constructive possession of the land in controversy, that would sustain this action of trespass, if there were not an actual adverse possession clearly made out on the part of the defendants. It is well settled that the owner of wild and uncultivated land is to be deemed in possession so as to maintain trespass until an adverse possession is clearly made out: Matthew *v.* Trinity Church, 3 *Ser. & R.* 513; Ward *v.* Taylor, 1 *Barr* 238. In the instruction of the Court below to the defendants' third point, which has been recited, and which ruled so decisively against the plaintiff below as to bar his recovery with the jury, this Court is of opinion there was error.

From the opinion expressed, we deem it unnecessary to remark on the other errors assigned specially, as they were not pressed in the argument, and the more controlling question has been fully reviewed and decided.

For the misdirection referred to, the judgment of the Court below is reversed, and a *venire facias de novo* awarded.