Roncace et al. *v.* Welsh et al. (Yurkovsky, Appellant).

Argued March 7, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*J. Semionov Russin,* with him *J. Julius Levy,* for appellant.

*Hervey B. Smith,* for appellees.

OPINION BY PARKER, J., July 19, 1940:

This is an action in trespass to recover damages for breaking and entering plaintiffs' close and involves the legal principles applicable to an action quare clausum fregit, as employed prior to the Practice Act of 1887: *Griffin v. Delaware & H. Co.,* 257 Pa. 432, 437, 101 A. 750. It concerns the location of the division line between properties of the plaintiffs and the defendants, that of the plaintiffs lying to the west and that of the defendants to the east. Claim was also made for double and treble damages under the provisions of Act of May 8, 1876, P. L. 142 (18 PS §2776). Plaintiffs obtained a verdict for double damages against M. E. Yurkovsky and Beaver Valley Coal Company, two of nine defendants named in the original writ, and verdicts were rendered in favor of the other defendants. Judgment was entered on the verdict against the two defendants and Yurkovsky is the sole appellant.

Although the record is voluminous, but two questions are raised by the appellant. He insists that the plaintiffs did not have such possession of the land as is required to maintain an action in trespass and that, in any event, the evidence was not sufficient to support the portion of the verdict for punitive damages. We are all of the opinion that the judgment must be affirmed.

(1) To maintain this kind of an action "one must have a property (either absolute or temporary) in the soil, and actual possession by entry": 3 Blackstone's Commentaries 210. As explained in SHARSWOOD's note

to that statement: "By the term 'property either absolute or temporary' the student might be led to suppose that this action is only maintainable by one who is lawful owner or lawfully in possession. But the action is founded on possession, not on title. In his original complaint, the plaintiff relies only on his possession, and discloses no title; nor will he be bound to prove any, unless the defendant destroys the presumption arising from his possession by showing a title *prima facie* good in himself. Even if it should appear clearly that the plaintiff's possession was wrongful, he will recover damages in case the defendant is also a wrong-doer and has no title to rely on."

"To maintain trespass, there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property: 3 Harris 31; and he must have been deprived of it by the tortious act of another": *Weitzel v. Marr,* 46 Pa. 463, 464. Where one has been in possession of land and another enters by artifice or violence, by indirect means, by force or fraud, or by entering the possession of the land in the absence of the former and against his consent, such possession by the latter is no possession at all provided only that the former acts with reasonable promptness to assert his rights: *Zell v. Ream,* 31 Pa. 304, 305.

The question involved being raised on motion by defendants for judgment n. o. v. and the plaintiffs having a verdict, the testimony must be read not only in the light most advantageous to plaintiffs, but they must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence: *Guilinger v. Penna. R. R. Co.,* 304 Pa. 140, 144, 155 A. 293. This principle does not seem to have been given consideration by the appellant in his argument.

Plaintiffs and defendants were the owners of lands patented in 1793, and the properties were separated by a line approximately 4,550 feet in length extending over

two sides of a mountain and through wild and unimproved land. Plaintiffs owned the westerly tract, known as the Longenberger patent, and defendants owned the Stone Hall or Reese patent on the east of the dividing line. In 1938 the defendants entered upon land west of the dividing line as claimed by plaintiffs and undertook by a stripping operation to bare a coal vein and remove the coal therefrom, whereupon this action was brought. It was stipulated on trial between the parties that the plaintiffs "have the title and right of possession to the Catherine Longenberger tract," that the defendants "were the owners in possession at the time this suit was brought of what is known as the John Reese warrant," and that "the dispute in this case is confined now to the question of the location of this division line between these two original patents or warrants."

The reason assigned in support of this appeal is not that the evidence was not sufficient to support the finding of the jury that the true line was located as claimed by plaintiffs. In fact, the plaintiffs supported their contention in that respect by convincing evidence and that of defendants was woefully weak, particularly the testimony of the one surveyor called by them. What appellant does contend is that trespass will not lie and that plaintiffs should have brought ejectment with claim for mesne profits.

The stipulation or admission referred to was probably sufficient of itself to support the use of the remedy of trespass, but plaintiffs did not stop there and they proved to the satisfaction of the jury actual possession. The land in dispute was wild land without improvements and it was admitted that plaintiffs were the owners of the Longenberger tract. If plaintiffs were the owners and the land was unimproved and unoccupied in any way, the title carried with it the possession and such possession was sufficient to support an action of trespass: *Irwin v. Patchen,* 164 Pa. 51,

67, 30 A. 436. "It has long been a settled point, that the owner of wild and uncultivated lands is to be deemed in possession so as to maintain trespass; ...... until an adverse possession is clearly made out": *Mather v. Trinity Church*, 3 S. & R. 508, 513; *Baker v. King*, 18 Pa. 138, 144. Possession of a farm draws to it the possession of the woodland belonging to it, though not enclosed; and the party in possession may maintain trespass against a wrongdoer for destroying timber in such woodland: *Penn v. Preston*, 2 Rawle 14, 19.

The plaintiffs did not rest there for they produced evidence showing that the line as claimed by them had been well marked for from sixteen to twenty-four years by monuments at the southeast and northeast corners, that at the south being a post in a stone pile witnessed on at least one standing tree, by blazed trees on the line, by iron rails set up on the line, by brushing out the line and so maintaining it for many years and by asserting the line as the true line against a former owner who had trespassed but withdrew and acknowledged the trespass.

"Trespass is the proper remedy ...... for cutting timber, or quarrying stone, or digging coal on another man's land and carrying it away": *Forsyth v. Wells*, 41 Pa. 291, 295; *Oak Ridge Coal Co., Ltd., v. Rogers*, 108 Pa. 147; *Gotshall v. Langdon & Co.*, 16 Pa. Superior Ct. 158; *Philson v. Wills*, 255 Pa. 613, 100 A. 463. These same cases and others extending back for more than a century have recognized the action of trespass q. c. f. as a proper remedy for just such trespasses as were alleged to have been committed here, and the remedy has been allowed where the contest turned upon the location of a dividing line and where the trespass was either intentional or unintentional. We find no merit in this contention.

(2) The proofs were sufficient to sustain a verdict which allowed punitive damages. It is provided by the Act of 1876 that "if any person or corporation shall

mine or dig out any coal, iron or other minerals, knowing the same to be upon the lands of another person or corporation, without the consent of the owner", the one "so offending shall be further liable to pay to such owner double the value of the said coal, iron or other materials so mined", or to pay treble damages in case of the conversion of the same to the use of such offender, to be recovered "with costs of suit, by action of trespass or trover as the case may be." There was not the slightest evidence of consent upon the part of the plaintiffs and there was clear and convincing evidence that the moment the trespass was discovered, which was a few days after defendants entered the close, they were notified to desist and when they did not obey, plaintiffs caused the appellant and his contractors and employees to be arrested.

The evidence that this defendant knew that he was on the lands of plaintiffs was circumstantial, as would be expected, but it was convincing. Plaintiffs' line was well marked considering the nature of the terrain and the character of the growth upon the land. This defendant was working on the surface and by his own admissions he knew he was at least near the dividing line. The slightest investigation would have disclosed the existence of a marked line indicating the boundary. Before appellant extended his operations to the disputed area he endeavored to buy the coal now in dispute, approaching both a former owner and the present owners of the Longenberger tract. There was also evidence from several sources that the appellant made threats that if they did not sell to him he would get the coal in any event.

While the appellant testified that he did not know where the line was, the jury did not accept this statement, apparently for the reason that he would not have endeavored to buy the coal if it was his. The strippings covered only a small area of the total acreage as the coal outcropped near the dividing line. We are of the

opinion that but one reasonable inference could be drawn and that was that appellant knew he was on plaintiffs' land. The testimony of appellant's one surveyor, called to support his contention as to the location of the line, was so weak that the jury could have well concluded that appellant was not making a bona fide claim. The surveyor first claimed a line which he had to abandon and his second claim was discredited. After the appellant was arrested he agreed with the plaintiffs to arbitrate the controversy and not dig any more coal until the dispute was settled, but after the surveyors met upon the ground and the surveyor's then contention was not of any force, he withdrew from the arbitration and proceeded with the mining of the coal contrary to his undertaking.

Judgment affirmed.