## H. K. Porter Co., Inc., v. Rocks et al.

*Henderson, Parshall & Crow,* for plaintiff.
*Robert B. Stauft,* for defendants.

CARR, J., November 17, 1944.—This is a proceeding by petition and rule under the Act of June 10, 1893, P. L. 415, 12 PS §1545, for an issue to settle and determine the respective rights and title of petitioner and respondents to oil and gas in place. The only question now to be decided is whether petitioner has such possession as is necessary to give us statutory jurisdiction. At the hearing the facts were presented without controversy.

*Findings of fact*

1. On September 20, 1943, petitioner, H. K. Porter Company, Inc., leased from the heirs of Mary H. Hibbs a tract of 108.932 acres of land in Luzerne Township for the exclusive purpose of exploring and operating for oil and gas for a term of two years, since extended to three years, and so much longer as oil and gas should be produced and saved from the premises. Petitioner's right, title, and right of possession based on said lease are disputed and denied by respondents, Thomas A. Rocks and Carnegie Natural Gas Company, wholly on matters of record appearing in the chain of title. The leased premises are not occupied by or under petitioner or either of the respondents.

2. Both petitioner and respondents claim under Theodore V. Hibbs and Mary B. Hibbs, his wife, as the common source of title. On June 22, 1922, Hibbs and his wife, being the owners of a tract of approximately two hundred acres of land in Luzerne Township, including the 108.932 acres in suit, demised, leased, and let to Greensboro Gas Company, its successors and assigns, all the oil and gas therein and also the said land for the purpose and with the exclusive right of drilling and operating thereon for said oil and gas, for a term

of 10 years and as much longer as oil or gas was found in paying quantities; the lessors were to receive a share in the proceeds of the oil and gas produced and marketed; the lease was to become null and void and all the rights of the lessee were to cease and determine unless a well producing oil or gas was completed within three months or unless the lessee paid $50 in advance for each additional three months that the completion thereof was delayed. This lease was recorded in the Recorder's Office of Fayette County on September 8, 1922, in Agreement Book 41, p. 114.

3. On March 28, 1928, Hibbs and his wife entered into an agreement in writing with respondent Rocks recorded on July 8, 1943, in Agreement Book 87, p. 47, by the terms of which they agreed to sell and he agreed to buy the tract of 200 acres of land aforesaid "under and subject to that certain lease for oil and gas now subsisting, but granting to the said second party, his heirs and assigns, all future rentals or benefits hereafter to arise or accrue" therefrom. It was stipulated in the agreement that the tract should be divided into two approximately equal parts by a line running north and south, the eastern part to contain 91.547 acres and the western part 108.932 acres. Thereafter Hibbs and his wife, by direction of Rocks, conveyed on April 6, 1928, by separate deeds in fee the eastern part to Rocks and the western part, which is the property here involved, to Morgan R. Dean and Iona Dean, his wife, taking from Dean and his wife for a portion of the consideration a bond and purchase-money mortgage upon the property as it was conveyed to them. The deed to Rocks contained no reference to the prior lease to the Greensboro Gas Company or any exception or reservation of oil or gas, but the deed to the Deans contained the following: "Also excepting and reserving therefrom and thereout all the oil and gas rights heretofore demised and leased by the grantors herein." Subsequently the Dean mortgage became in default,

judgment was entered on July 29, 1939, upon the bond in favor of Mary B. Hibbs, whose husband had died, execution was issued, and all the right, title, and interest of the Deans was sold and conveyed by the sheriff to said Mary B. Hibbs. Thereafter Mrs. Hibbs died intestate, leaving to survive her as her only heirs at law three sisters: Josephine E. Henderson, Ethel E. Porter, and Retta E. Carter, who, with their respective spouses, on September 20, 1943, executed and delivered to H. K. Porter Company, Inc., petitioner, the lease shown in our first finding, which lease was recorded on January 6, 1944, in Agreement Book 86, p. 12. By a supplemental agreement dated September 11, 1944, and recorded on September 25, 1944, in Agreement Book 90, p. 31, the primary term of this lease was extended for an additional year.

4. Respondent Rocks, claiming right, title, and right of possession of the oil and gas underlying the entire tract of 200 acres by virtue of the agreement between him and Theodore V. Hibbs and Mary B. Hibbs, dated March 28, 1928, has at various times executed and delivered oil and gas leases thereof to other persons, viz, on February 22, 1932, to Greensboro Gas Company for a term of five years from January 22, 1932, and as much longer as operations for oil and gas were being conducted on the premises or oil or gas was found in paying quantities, which was recorded on May 11, 1932, in Agreement Book 64, p. 175; on December 31, 1936, to Greensboro Gas Company for a term of five years from January 22, 1937, and as much longer as operations for oil and gas were being conducted on the premises or oil or gas was found in paying quantities, which was recorded on January 16, 1937, in Agreement Book 66, p. 438; on December 3, 1941, to Greensboro Gas Company for a term of two years from January 22, 1942, and as much longer as operations for oil and gas were being conducted on the premises or oil or gas was found in paying quantities, which was re-

corded on January 16, 1942, in Agreement Book 79, p. 497; on April 19, 1944, to Carnegie Natural Gas Company, one of the respondents, for a term of five years and as long after commencement of operations as the premises were being operated for the production of oil and gas, or oil or gas was produced therefrom, which was recorded on May 3, 1944, in Agreement Book 89, p. 131.

5. No well on any part of the tract of 200 acres was completed by Greensboro Gas Company by June 22, 1932, nor since by it or any other person; no person has ever entered upon the premises under any of the leases aforesaid, and no oil or gas therefrom has ever been produced or marketed.

### Discussion

By the terms of section 2 of the Act of June 10, 1893, P. L. 415, 12 PS §1545, the procedure here adopted was made available "When any person or persons, natural or artificial, shall be in possession of any lands or tenements in this commonwealth, claiming to hold or own possession of the same by any right or title whatsoever, which right or title or right of possession shall be disputed or denied by any person or persons as aforesaid . . ." Petitioner is not, it is true, in actual possession of the oil and gas underlying the lands of its lessors, but with respect to undeveloped minerals not susceptible of actual possession the constructive possession incident to prima facie legal title and right of immediate possession is, in the absence of adverse occupancy, sufficient to give the court jurisdiction to frame an issue: Britton v. Posey et al., 29 Pa. C. C. 668; Laidley v. Rowe, 69 Pitts. L. J. 59, 275 Pa. 389, 393; compare Roncace et al. v. Welsh et al., 141 Pa. Superior Ct. 170. If, then, petitioner has prima facie legal title, its title draws to it such possession as will warrant the award of an issue.

The title of petitioner is disputed by respondents solely on the theory that, whereas the agreement of

Hibbs and his wife of March 28, 1928, to convey to Rocks the 200-acre tract "Under and subject to that certain lease for oil and gas now subsisting, but granting to the second party, his heirs and assigns, all future rentals or benefits hereafter to arise or accrue" therefrom entitled Rocks to the rents and royalties to accrue under the Greensboro lease and to the reversionary interest in the oil and gas, the conveyance made at his direction by the Hibbs to the Deans "also excepting and reserving therefrom and thereout all the oil and gas rights heretofore demised and leased by the grantors herein" still left in Rocks the reversionary interest in the oil and gas as well as the rents and royalties to accrue under the Greensboro lease. This theory is untenable. What was excepted and reserved in the deed made at Rocks' direction to the Deans was not the reversionary interest in the oil and gas nor even the rents and royalties to accrue under the outstanding lease, but simply "the oil and gas rights heretofore demised and leased." The exception or reservation saved only the rights of the Greensboro Gas Company, that is to say, the outstanding leasehold estate. It merely recognized the limitation of the grantors' title as it existed, and is of the same import as the language "under and subject to that certain lease for oil and gas now subsisting" as used in the agreement of March 28, 1928. As to the rents and royalties, the rule is that they are incident to and accompany the reversion, unless separated by an express reservation: Johnston v. Smith, 3 P. & W. 496; Braker v. Deuser, 49 Pa. Superior Ct. 215. Consequently, on the face of the record the agreement so far as it affects the 108.932-acre tract was wholly merged into the deed and extinguished (Stoever et al. v. Gowen et al., 280 Pa. 424; Dintenfass v. Greenberg, 318 Pa. 20), and the Deans became vested with both the reversionary interest in the oil and gas underlying the land conveyed to them and the right to receive the future rent and

royalty in proportion to their holding of the entire acreage leased: Martin v. Manufacturers Light & Heat Co., 18 Wash. Co. 157. Hence, when the lease terminated at the end of the exploratory period on June 22, 1932, by reason of the failure of the lessee to produce oil or gas within that period (Cassell v. Crothers, 193 Pa. 359; Clark et al. v. Wright et al., 311 Pa. 69), all interest in the oil and gas under the 108.932-acre tract reverted to the Deans, under whom petitioner claims. Accordingly, the title of petitioner appears to be good.

### Conclusions of law

1. The court has jurisdiction to frame an issue to settle and determine the respective rights and title of petitioner and respondents.

2. The rule should be made absolute and an issue framed.

### Order

And now, November 17, 1944, upon consideration of the foregoing case, it is ordered and directed, nisi, as follows:

1. That the rule heretofore issued to show cause why an issue should not be framed between petitioner and respondents to settle and determine their respective rights and title in and to the oil and gas within and underlying the lands described in the petition be and it is hereby made absolute.

2. That an issue be and is hereby framed to be tried before a jury wherein Thomas A. Rocks and Carnegie Natural Gas Company shall be plaintiffs and H. K. Porter Company, Inc., shall be defendant, to settle and determine whether plaintiffs or defendant holds title and right of possession to the oil and gas within and underlying the lands described in the petition.

3. Within 30 days after this date plaintiffs shall file and serve upon defendant a declaration and abstract of title, and within 30 days after service thereof de-

fendant shall file an answer and abstract of title and serve the same upon plaintiffs, who, within 30 days after service of defendant's answer and abstract, shall file and serve upon defendant a replication to any new matter set up in defendant's answer or abstract.

The prothonotary is directed to give notice forthwith to the parties or their attorneys of the filing of this order and award of issue, and the same shall become final and be so entered by the prothonotary unless exceptions are filed hereto within 10 days.