Robert FLORIG and John Florig, Trading as R.J. Holding Company, Appellants

v.

ESTATE OF William J. O'HARA, Sr., Betty O'Hara, Sanitary Landfill, Inc., William J. O'Hara, Inc., O'Hara Sanitation Company, Inc., R.T. Environmental, Inc., C.S. Garber & Son, Inc., Mary D. McCormick, Suzanne M. Schlacter and Mary Lou Kelly, Appellees.

Superior Court of Pennsylvania.

Argued June 21, 2006.

Filed Nov. 27, 2006.

Reargument Denied Jan. 10, 2007.

Richard L. Bazelon, Philadelphia, for appellants.

Michael A. John, Norristown, for Garber, appellee.

Robert J. Reilley, Jr., King of Prussia, for Estate of O'Hara, appellee.

BEFORE: KLEIN, GANTMAN, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.:

¶ 1 Appellants, Robert and John Florig, appeal from the order of the trial court denying their petition to open the judgment of *non pros* that had been entered against them. We reverse in part and affirm in part.

¶ 2 The litigation that has culminated in this appeal commenced on December 18, 1996, when appellants, who were owners of a parcel of property located in Montgomery County, filed a complaint in trespass against the following parties: the estate of William J. O'Hara, Sr., Betty O'Hara, Sanitary Landfill, Inc., William J. O'Hara, Inc., O'Hara Sanitation Company, Inc., R.T. Environmental, Inc. (R.T. Environmental), and C.S. Garber & Son, Inc. (Garber). Appellants alleged in that complaint that the O'Haras, through companies owned by them, had conducted a landfill operation that had, surreptitiously and without legal permission, utilized a significant portion of appellants' land for part of their landfill operation, and, as a conse-quence, had contaminated that portion of their land making it unusable for development. Appellants further alleged that R.T. Environmental and Garber had been engaged by the O'Haras to provide professional services related to the closing of the landfill operation, and, in fulfillment of their duties, had trespassed and placed monitoring equipment on appellants' land.

¶ 3 In January and February of 1997, Betty O'Hara, R.T. Environmental, and Garber filed answers with new matter, and appellants filed a petition to amend the caption of their complaint to reflect that Betty O'Hara was the personal representative of the estate of William J. O'Hara, Sr. Thereafter, on March 7, 1997, a statement of death was filed with the trial court indicating that Betty O'Hara had died on January 28, 1997, and that William J. O'Hara, Jr., had been appointed as the executor of her estate, and had, as well, been appointed as personal representative of the estate of William J. O'Hara, Sr. In that dual capacity William J. O'Hara, Jr., on March 31, 1997, filed an answer with new matter on behalf of both the estate of William J. O'Hara, Sr., and the estate of Betty O'Hara.

¶ 4 On April 11, 1997, the trial court entered an order, upon a petition filed by appellants, consolidating a collateral action that had been filed by appellants against Ronald R. Hartman, doing business as International Exploration, and related companies. Then, on May 20, 1997, the trial court, without opinion, entered an order denying appellants' request to amend the caption of their original complaint to reflect that Betty O'Hara was the personal representative of the estate of William O'Hara, Sr.

¶ 5 In the ensuing six and one-half years, the only docket activity was a series of notices filed by various attorneys for the

respective parties entering or withdrawing their respective appearances. Due to the lack of apparent docket activity, the trial court on or about October 24, 2003, acting pursuant to Pa.R.Civ.P. 230.2, issued a "notice of proposed termination of court case" to the parties. Almost, immediately, on October 28, 2003, appellants filed a statement of intention to proceed on their complaint, and no action was taken by the prothonotary.[1] Thereafter, during the next six months, the docket activity consisted solely of the filing of a withdrawal of appearance by one attorney and an entry of appearance by a new attorney for the estate of Betty O'Hara.

¶ 6 On April 6, 2004, the estate of Betty O'Hara filed a motion for entry of a judgment of *non pros* in which it alleged,[2] *inter alia*, that "no significant activity of any kind was undertaken by the plaintiff[s]" in this case, and that it had "been prejudiced in its ability to present any sufficient [sic] factual information at the time of trial due to the fact that Mrs. O'Hara has died." Motion for *Non Pros*, ¶¶ 5, 17. Noticeably absent from this petition was any mention of the extensive history of settlement negotiations, spanning the period from 1997 through 2003, that had taken place between the parties, and the fact that, at one point, the estate had offered to settle this dispute by paying to appellants an amount of more than three-quarters of a million dollars in exchange for the land at issue.

¶ 7 Defendant Garber and defendant R.T. Environmental joined in this motion of the estate of Betty O'Hara for judgment of *non pros*. Garber merely adopted the allegations contained in the original motion of the Estate of Betty O'Hara,[3] while R.T. Environmental raised, as a claim of prejudice, the fact that appellants had not provided discovery information over the six years that had transpired between their last request for discovery and the motion for judgment of *non pros*.

¶ 8 Appellants, in their response to the motion for judgment of *non pros* filed by the estate of Betty O'Hara averred, *inter alia*, that:

> Plaintiffs [appellants] have actively and continuously engaged in extensive settlement negotiations with defendants, including, without limitation: (a) meetings, discussions, surveys, correspondence and telephone calls related to a land-swap agreement proposed by the O'Hara defendants in 1997–98; (b) appraisals, correspondence, phone calls, and meetings related to the proposed sale of the plaintiffs' property to the O'Hara defendants, including negotiating the terms and revisions to the draft stipulation and agreement of sale, and undertaking separate negotiations with the remaining defendants, from 1998–2001; (c) meetings, correspondence, e-mails, and phone calls related to the three alternate settlement proposals before the parties, from 2001–2003; and (d) phone calls, a luncheon meeting between plaintiff Robert Florig and defendant William O'Hara, Jr., e-mails, and correspondence in 2003 related to new negotiations based on the land-swap first proposed in 1998.

> * * * *

> [I]n 2001, plaintiffs granted the O'Hara defendants and their counsel entry onto

1. Hence, we are not dealing with a judgment of *non pros* that was entered by the prothonotary as part of its duty to maintain efficient dockets.

2. This motion was apparently filed under Pa. R.C.P. 208.1, which governs the filing of motions not otherwise specifically excluded by that rule.

3. Garber subsequently filed, on June 11, 2004, an amended response and motion for joinder in which it specifically averred that it had been prejudiced by the delay.

the Florigs' land in response to their request for entry upon designated land for inspection [and] plaintiffs served document discovery on all defendants in this case in January 2004, after settlement negotiations with the O'Hara defendants terminated.

\* \* \* \*

Any delays in prosecuting this case had no effect on defendant's ability to present Mr. O'Hara's testimony because he was never an available witness in the action [since he had died seven years before the complaint was filed]. Mrs. O'Hara died in January, 1997, one week after she answered the complaint. Delay that occurred after the death of Mrs. O'Hara had no effect on defendant's ability to present her testimony, because she was no longer an available witness prior to any such delay.

Plaintiffs' Reply to Defendant's Motion for *Non Pros,* ¶¶ 5, 6, 16. Appellants also filed a response to the joinder motion filed by R.T. Environmental, but did not file a separate response to the joinder motion filed by Garber.

¶ 9 While neither an evidentiary hearing nor discovery proceedings followed the filing of the motion for entry of judgment of *non pros,* the trial court did conduct oral argument upon the motion for *non pros.*[4] Thereafter, on November 9, 2004, the trial court entered an order granting the motion for judgment of *non pros* as to all

defendants and dismissed appellants' action with prejudice.[5]

¶ 10 Within two weeks of the entry upon the docket of the order granting judgment of *non pros,* appellants filed a petition to open the judgment,[6] to which was attached a multitude of exhibits evidencing the history of settlement negotiations between appellants and the O'Hara defendants. The estate of Betty O'Hara filed a response to the petition to open in which it admitted, *inter alia,* (1) "that the parties entered into settlement negotiations [and] that there were various attempts to reach an agreement with regard to settling the matter," (2) that it had "entered into discussions with the plaintiff[s] with regard to the possible purchase of the property," (3) that it had "issued a draft settlement proposal to plaintiffs," and that it had "continued in good faith to negotiate with the plaintiffs." Response to Plaintiffs' Petition to Open Judgment of *Non Pros,* ¶¶ 11, 15, 16, 18–20.

¶ 11 Defendant Garber, a corporation, filed a response to appellants' petition to open in which it averred, in summary, that it had never been a party to any settlement discussions, and, as to it, the judgment should stand due to the failure of plaintiffs/appellants to pursue their claim of relief against it. Defendant, R.T. Environmental filed a response in which it voiced similar reasons as those advanced by Garber for denial of the petition to open.

---

**4.** Although not specifically cited in the docket, the notices of oral argument that were served on the parties indicate that oral argument was scheduled for October 29, 2004. No transcript was produced to memorialize the arguments of counsel that were presented at that hearing.

**5.** Although not specifically cited in the order of the trial court, the order appears to have been entered pursuant to Pa.R.C.P.

208.4(a)(1). In entering this order the trial court eschewed, as was its prerogative, the development of a factual record as permitted under Pa.R.C.P. 208.4(a)(2) and Pa.R.C.P. 208.1(b)(1).

**6.** Appellants' petition to open was filed pursuant to Pa.R.C.P. 206.1(a)(1), which specifically applies to the filing of petitions to open judgments of *non pros.*

¶ 12 On December 30, 2004, the trial court issued an administrative order advising the parties that, prior to scheduling the case for argument, the parties were to complete "needed discovery" within sixty (60) days.[7] Thereafter, the depositions of one of the attorneys who had represented appellants (Richard L. Bazelon, Esquire), and one of the appellants (Robert Florig) were taken and subsequently filed with the court as exhibits to appellants' Memorandum of Law in Support of [Their] Petition to Open Judgment of *Non Pros.* The estate of Betty O'Hara also included the deposition of Robert Florig as an exhibit to its Memorandum of Law.

¶ 13 The trial court, on November 3, 2005—following its consideration of the petition to open, responses, legal memoranda, and oral argument—entered an order denying appellants' petition. This appeal followed.

¶ 14 Appellants, in the brief filed in support of this appeal, now raise the following questions for our review:

Whether the trial court erred when it "refused to open the judgment of *non pros* where the evidence show[ed] that the parties were engaged in ongoing serious settlement negotiations during the period of docket inactivity, that counsel for plaintiffs and defendant expressly agreed to postpone discovery during the negotiations, and that the motion for *non pros* was not made until plaintiffs recommenced discovery promptly upon the conclusion of these negotiations?"

Whether the trial court erred when it "refused to open the judgment of *non pros* where the petition alleged facts showing that plaintiffs [had] a meritorious cause of action for continuing trespass to land?"

¶ 15 The law governing our consideration of these questions is not in dispute. Rule 3051 of the Pennsylvania Rules of Civil Procedure sets out the procedure and requirements for seeking to have a judgment of *non pros* opened. It provides:

(a) Relief from a judgment of *non pros* shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.

(b) If the relief sought includes the opening of the judgment, the petition shall allege facts showing that: (1) the petition is timely filed; (2) there is a reasonable explanation or legitimate excuse for the inactivity or delay; and (3) there is a meritorious cause of action.

Pa.R.C.P. 3051. *See also: Collura v. L & E Concrete Pumping, Inc.,* 454 Pa.Super. 572, 686 A.2d 392, 394 n. 2 (1996), *appeal denied,* 548 Pa. 653, 698 A.2d 63 (1997); *Valley Peat & Humus v. Sunnylands, Inc.,* 398 Pa.Super. 400, 581 A.2d 193, 196 (1990) *(en banc), appeal denied,* 527 Pa. 650, 593 A.2d 422 (1991).

■ ¶ 16 The standard governing our review of a trial court decision to deny a petition to open a judgment of *non pros* is one of abuse of discretion. *See: Jacobs v. Halloran,* 551 Pa. 350, 354, 710 A.2d 1098, 1101 (1998); *Stephens v. Messick,* 799 A.2d 793, 798 (Pa.Super.2002). A trial court will be found to have abused its discretion if, in reaching its conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill

---

7. A similar order was issued by the trial court prior to the grant of the motion for judgment of *non pros,* but no discovery was conducted prior to that hearing. It bears mention, however, that due to the procedural posture of the respective proceedings appellants were the parties with the burden of proof in the second proceeding.

will. *Bennett v. Home Depot, U.S.A. Inc.,* 764 A.2d 605, 606 (Pa.Super.2000).

¶ 17 In the present case, it bears emphasis that the trial judge did not render findings of fact in support of his ultimate conclusion to refuse to open the judgment of *non pros.* Rather, the judge decided as a matter of law that appellants had failed to sustain their burden to establish the second element set out in Pa. R.C.P. 3051(b), namely, that "there [was] a reasonable explanation or legitimate excuse for the inactivity or delay" that appears in the record. Specifically, the court opined:

> In the instant matter, the first factor required to open a judgment *non pros* is not at issue. With regard to the second requirement to open of judgment *non pros,* the courts have developed a three (3) prong test to determine whether a delay in the docket activity has been reasonably explained: whether (1) a party has shown a lack of due diligence by failing to proceed with reasonable promptitude; (2) there is no compelling reason for delay; and (3) the delay has caused actual prejudice to the adverse party. *Jacobs v. Halloran,* 551 Pa. 350, 710 A.2d 1098, 1103 (1998) (citing *James Brothers Lumber Co. v. Union Banking and Trust Co. of DuBois,* 432 Pa. 129, 247 A.2d 587, 589 (1968)).
>
> In determining whether or not a plaintiff has acted with due diligence, the proper inquiry is whether a plaintiff has delayed matters such that it is incompatible with the orderly and prompt dispatch of judicial business. *Colella v. Philadelphia Housing Authority,* 162 Pa.Cmwlth. 361, 638 A.2d 499, 500 (1994). As examples, the courts in this Commonwealth have held that an unexcused three year period of inactivity after the filing of the initial writ of summons, constituted a long period of dormancy, *Metz Contracting, Inc. v. Riverwood Builders, Inc.,* 360 Pa.Super. 445, 520 A.2d 891 (1987), and a lack of docket activity for a period of three years combined with complete absence of discovery showed a long term lack of progress and a failure to proceed with a cause of action within a reasonable time. *Moore v. George Heebner, Inc.,* 321 Pa.Super. 226, 467 A.2d 1336 (1983). The six (6) year period of inactivity present in the instant matter establishes a lack of due diligence and a failure to proceed with reasonable promptitude.
>
> Generally, it has been held that settlement negotiations do not present compelling reasons for delay. *County of Erie v. Peerless Heater Company,* 660 A.2d 238, 240 (Pa.Cmwlth.1995); *Pennridge Electric, Inc. v. Souderton Area Joint School Authority,* 419 Pa.Super. 201, 615 A.2d 95 (1992). In *Pennridge Electric, Inc.,* the period of docket inactivity persisted for more than four (4) years. *Id.* at 98. The appellant claimed that this period of delay was due to ongoing settlement negotiations between the parties, which the appellant averred to be a compelling reason for the delay. *Id.* However, the court in *Pennridge Electric, Inc.,* disagreed with the appellant's assertion that settlement negotiations constituted a compelling reason for a delay of more than four (4) years. *Id.* Specifically, the court stated that "[a]bsent extraordinary circumstances, it is hard to imagine any reason to permit settlement negotiations to continue without result for this long at the expense of any activity on the docket. The law favors settlement, and while counsel should be permitted a reasonable period of time in which to attempt to work out an amicable resolution, at some point the knowledge that there is no deadline on the negotiations serves to impede, rath-

er than promote, settlement." *Id.* In the case at bar, the appellants assert that settlement negotiations establish a compelling reason for a six (6) year period of docket inactivity. In accordance with *Pennridge Electric, Inc.*, this Court submits that there is no compelling reason for the delay.

The Supreme Court of Pennsylvania has held that prejudice could be established by the death or absence of a material witness. *James Brothers [Lumber] Co. v. Union Banking and Trust Co. of Du-Bois,* 432 Pa. 129, 247 A.2d 587, 589 (1968). The Superior Court further has defined prejudice as "any substantial diminution of a party's ability to properly present its case at trial." *Metz Contracting Inc. v. Riverwood Builders, Inc.,* 360 Pa.Super. 445, 520 A.2d 891, 894 (1987). In the instant mater, the defendants' ability to present a defense has been diminished by the delay. The defendants have established prejudice through the death of witnesses.

The third element to consider in determining whether to open a judgment *non pros* is the appellants' establishment of a meritorious cause of action.... [T]his Court finds it unnecessary to consider whether the appellants have established the existence of facts to support a cause of action.

Trial Court Opinion, O'Neill, J., January 12, 2006, pp. 4–6.

¶ 18 A close examination of the rationale expressed by the trial judge reveals that his decision was largely dependent upon the view that the present case is controlled by this Court's decision in *Pennridge Electric, Inc. v. Souderton Area Joint School Authority,* 419 Pa.Super. 201, 615 A.2d 95 (1992).[8] However, there are stark distinctions between the facts that gave rise to our decision in *Pennridge, supra,* and the facts of this case.

¶ 19 At the outset, it merits mention that there is insufficient authority to support the overarching statement of the trial judge that "[g]enerally, it has been held that settlement negotiations do not present compelling reasons for delay." *See:* Trial Court Opinion, *supra,* at p. 5. In fact, it would be more accurate to say that there is no "general" rule, but that the effect of settlement negotiations upon an inquiry into unreasonable delay is a conclusion that is dependent upon the facts and circumstances of each individual case. *See: Marino v. Hackman,* 551 Pa. 369, 374, 710 A.2d 1108, 1111 (1998) ("[E]ach case must be examined on its merits"). *See also: Iole v. Western Auto Supply Co.,* 352 Pa.Super. 528, 508 A.2d 600 (1986).

¶ 20 Moreover, in *Pennridge, supra,* the original complaint was filed in 1973, and the petition for *non pros* was not filed until *1989*—a period of sixteen years. During the latter portion of that time period there was a four and one-half year period which became the focus of the court's discussion as to whether the plaintiff's delay in prosecuting the case was fatal to its ability to proceed with the case. Plaintiffs/appellants claimed that there were ongoing settlement discussions during this period, but

---

**8.** The trial court also cited to the decision of the Commonwealth Court in *County of Erie v. Peerless Heater Company,* 660 A.2d 238 (Pa. Cmwlth.1995), in support of its conclusion that there was no compelling reason for the delay in moving this case forward. That case is distinguishable because it relied upon *Pennridge Electric, Inc. v. Souderton Area Joint School Authority,* 419 Pa.Super. 201, 615 A.2d 95 (1992), a decision that we have already distinguished, and was further grounded upon the decision of the Pennsylvania Supreme Court in *Penn Piping, Inc. v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992), a decision that has since been abrogated by the Supreme Court. *See: Jacobs v. Halloran,* 551 Pa. 350, 710 A.2d 1098 (1998).

this Court specifically disagreed with the plaintiff/appellant's characterization of these discussions, finding that the discussions between the parties "occurred sporadically, infrequently, and without any subsequent progress in negotiations." *Pennridge, supra,* 615 at 98. We further noted that these settlement "discussions" were one sided, and that the defendant's counsel had told plaintiff's counsel that "the case was going to have to be tried because nothing they were discussing was in the range of what was acceptable to both parties." *Id.* at 99. Thus this Court, in concluding that plaintiff/appellant's claim of settlement discussions was not *reasonable,* relied upon the fact that the parties "were never close enough in their figures to reasonably believe that a settlement was possible." *Id.*

¶ 21 In the present case, however, there were ample facts pleaded to support the belief that the O'Hara defendants had impermissibly used part of appellant's property for their landfill operation. Moreover, it is beyond dispute that during the course of this litigation, the O'Hara defendants, whether in the person of the O'Haras individually (specifically their respective estates) or their company, had (1) "entered into settlement negotiations [and] that there were various attempts to reach an agreement with regard to settling the matter," (2) discussed with the plaintiff[s] "the possible purchase of the property," (3) "issued a draft settlement proposal to plaintiffs," and (4) "continued in good faith to

negotiate with the plaintiffs." Response to Plaintiffs' Petition to Open Judgment of *Non Pros,* ¶¶ 11, 15, 16, 18–20. These settlement discussions between appellants and the O'Hara defendants continued at least up until November of 2003.[9] It was only after these discussions had come to an impasse and appellants had reinstituted their discovery proceedings that appellees sought to escape a trial upon the claims of liability by seeking a judgment of *non pros.*[10]

■ ¶ 22 Consequently, we must conclude that the trial court erred in holding that this case was controlled by our decision in *Pennridge, supra.* Moreover, the Supreme Court in *Jacobs v. Halloran, supra,* 551 Pa. at 356–357, 710 A.2d at 1102, re-emphasized the equitable principles that underlie the consideration of a motion for judgment of *non pros,* and the attendant petition to open a granted judgment of *non pros.* It is with those principles in mind that we conclude that it would work a substantial injustice to appellants to affirm the trial court's grant of judgment under the facts of this case. Finally, since the test announced in *James Brothers Lumber Co. v. Union Banking and Trust Company of Du Bois,* 432 Pa. 129, 132, 247 A.2d 587, 589 (1968), for determining the existence of a reasonable expectation or legitimate excuse for the inactivity or delay, requires the movant to satisfy all three prongs, we need not separately address the other prongs [11] before concluding that

---

9. *See:* Deposition of Richard L. Bazelon, Esquire, February 28, 2005, p. 37.

10. The record reveals that appellants served interrogatories on the respective defendants in January of 2004, and that the motion for *non pros* was filed in April of 2004.

11. It bears emphasis, however, that were we to separately address the prejudice prong we would conclude that the record does not sus-

tain appellees' claim of prejudice, since the deaths of potential witnesses to which they referred occurred either before the litigation was commenced (William O'Hara died six years before the onset of litigation), or in the earliest stage of this litigation (Betty O'Hara died prior to the pleading stage being completed). In neither instance did these deaths affect the process of this litigation, nor is there any evidence that the ensuing time period during which the parties explored settle-

the decision of the trial court cannot be sustained as to the O'Hara defendants.[12]

■ ¶ 23 Our conclusion as to appellants' first question necessitates a resolution of appellants' second question raised on this appeal, which was phrased as follows: "Should the trial court have refused to open the judgment of *non pros* where the petition alleged facts showing that plaintiffs have a meritorious cause of action for continuing trespass to land?" The trial court refused to address that question on the basis that it was moot since, in the view of the trial court, appellants' failure to satisfy the reasonable explanation requirement of the Rule 3051 test rendered further discussion unnecessary. Although we agree with the logical conclusion rendered by the trial court, given the then extant finding that appellants had failed to provide a reasonable explanation for the lack of docket activity, the effect of today's decision that appellants' explanation was both reasonable and legitimate has now removed the premise upon which the trial court's logic rested. Thus, we must address that final requirement, which is whether the record established that appellants had stated a meritorious cause of action.

¶ 24 The Pennsylvania Supreme Court has held that the requirement of a meritorious cause of action "is satisfied if the claim as pleaded and proved at trial would entitle [plaintiff] to relief." *Simmons v. Luallen*, 563 Pa. 589, 594, 763 A.2d 810, 813 (2000). In this case, appellants, in their original complaint, pleaded a *prima facie* claim of trespass upon their land[13] against the O'Hara defendants, specifically that:

16. It is believed and therefore averred that a portion of the O'Hara landfill extends approximately one hundred fifty (150) feet onto and across plaintiffs' property without the consent and against the will of plaintiffs causing an ongoing and illegal trespass to plaintiffs' property. By such entry defendants have severely altered the nature and contour of plaintiffs' land making it unusable to, and unsaleable by, plaintiff[s].

17. In addition, the encroachment of defendants' landfill onto plaintiffs' property has forced plaintiffs to cease their development of the property causing them great economic harm now and in the future.

18. It is believed and therefore averred that toxic substances have been dumped

---

ment exacerbated the effects of those deaths. *See: Manson v. First National Bank in Indiana*, 366 Pa. 211, 77 A.2d 399 (1951).

**12.** Appellants have proffered no argument on why the trial court's order was in error as to Garber, and our independent review of the record supports the claim of Garber that it did not contribute to any delay, and did not stand to benefit from the delay. Nor do appellants persuasively argue that they had a meritorious claim against Garber. Therefore, as to Garber we must affirm the order refusing to open the judgment of *non pros*.

It bears further comment that R.T. Environmental is not a party to this appeal, having filed a notice of no interest in this Court in which it stated that it had "settled with the

plaintiffs/appellants and will not be participating in the appeal." December 14, 2005, Letter, Counsel for R.T. Environmental Services, Inc. Therefore, we enter no order affecting rights and obligations of R.T. Environmental.

**13.** The tort of trespass on land was cogently described by this Court as follows:

"To maintain trespass, there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property; and he must have been deprived of it by the tortious act of another".

*Roncace v. Welsh*, 141 Pa.Super. 170, 14 A.2d 616, 617 (1940) (citations omitted). *See also:* 2 Standard Pennsylvania Practice 2d § 6:31 (2001); Restatement (Second) of Torts, Chapter 7.

at the landfill site in such a manner as to cause the toxic substances to enter into and contaminate the soil and ground water of the plaintiffs' property, without plaintiffs' consent and against plaintiffs' will. Such entry of toxic substances constituted, and continues to constitute, a trespass on plaintiffs' property by defendants. By such entry of toxic substances, defendants interfered, and continue to interfere, with the rights of plaintiff.

19. The entry of toxic substances from the defendants' landfill into the soil and groundwater of plaintiffs' property has increased the contaminant concentrations of "indicator compounds" including but not limited to ammonia, total dissolved solids (TDS), and total organic carbon (TOC), as well as, concentrations of several volatile organic compounds, including several chlorinated solvents, particularly benzene, tetra chloroethylene (PCE), trichloroethene (TCE) and vinyl chloride, all in excess of the regulatory standards.

20. The contamination of plaintiffs' soil and groundwater has forced plaintiffs to cease their development of the property causing them great economic harm.

* * * *

33. It is believed and therefore averred that at all times material to plaintiffs' complaint, O'Hara Corps and/or O'Haras disposed of solid waste and operated an unpermitted landfill at the Henderson road site.

34. It is believed and therefore averred that at all times material to plaintiffs' complaint, O'Hara Corps and/or O'Haras did, without the consent and against the will of plaintiffs, come upon the plaintiffs' land and dump trash and debris on the plaintiffs' property. By such entry defendants have severely altered the nature and contour of plaintiffs' land making it unusable to, and unsaleable by, plaintiff[s].

35. In addition, the existence of defendants' trash on plaintiffs' property has forced plaintiffs to cease the development of their property and has depleted plaintiffs' property of its value. As a result, plaintiffs have suffered and will continue to suffer great economic harm.

36. It is believed and therefore averred that at all times material to plaintiffs' complaint O'Hara Corps and/or O'Haras dumped toxic substances at the landfill site in such a manner as to cause the toxic substance to enter into and contaminate the soil and groundwater of plaintiffs' property without plaintiffs' consent and against plaintiffs' will. Such entry of toxic substance constituted, and continues to constitute, a trespass on plaintiffs' property by defendants. By such entry of toxic substance, defendants interfered, and continue to interfere, with the rights of plaintiff[s].

37. The entry of toxic substances from the defendants' landfill into the soil and groundwater of plaintiffs' property has increased the contaminant concentrations of "indicator compounds" including but not limited to ammonia, total dissolved solids (TDS), and total organic carbon (TOC), as well as, concentrations of several volatile organic compounds, including several chlorinated solvents, particularly benzene, tetra chloroethylene (PCE), trichloroethene (TCE) and vinyl chloride, all in excess of the regulatory standards.

38. The contamination of plaintiffs' soil and groundwater has forced plaintiffs to cease their development of the property causing them great economic harm.

39. By reason of the foregoing plaintiffs have been deprived of any benefit,

enjoyment, or use of plaintiffs' land and has [sic] been irreparably injured.

Complaint, ¶¶ 16–20; 33–39. Since these allegations, if proved, establish a meritorious cause of action, we have no hesitation in concluding that the third element for opening a judgment of *non pros* is satisfied on this record.[14]

¶ 25 Consequently, since appellants satisfied the requirements as set out in Pa. R.Civ.P. 3051 for the opening of a judgment of *non pros,*[15] they are entitled to relief on their petition as it relates to the O'Hara defendants.

¶ 26 Order reversed as to the O'Hara defendants. Case remanded to the trial court for the entry of an order opening judgment of *non pros* as to the O'Hara defendants. Order affirmed as to Garber.[16] Jurisdiction relinquished.

---

14. It bears mention that the citation by appellees to this Court's decision in *Stephens v. Messick,* 799 A.2d 793 (Pa.Super.2002), which suggested in *dicta,* that the inquiry into whether a meritorious cause of action has been pleaded necessitates an examination of "facts elicited during discovery," is not persuasive. The Court in *Stephens, supra,* specifically held that a party could not evade the requirements of filing a petition under Pa. R.C.P. 3051, by relying on a petition for reconsideration and an improperly filed appeal. The Court did not specifically address the requirements of stating a meritorious cause of action, or otherwise alter the law as stated in *Simmons v. Luallen,* 563 Pa. 589, 594, 763 A.2d 810, 813 (2000). Moreover, since the decision in *Simmons, supra,* was rendered by the Pennsylvania Supreme Court, any inconsistencies between the two cases would be resolved in favor of following the law as stated by the Supreme Court.

Additionally, appellees reliance on this Court's decision in *Beach Street Corp. v. A.P. Construction Co., Inc.,* 441 Pa.Super. 639, 658 A.2d 379 (1995), *appeal denied,* 544 Pa. 680, 679 A.2d 227 (1996), is similarly misplaced, since the opinion in that case discussed the effect of the affirmative defense of statute of limitations that was established *at trial.* While, appellees here will be given the opportunity to litigate their affirmative defenses as the litigation in this case ensues, it is not for a reviewing court to decide those issues when considering the elements as set out in Pa. R.C.P. 3051.

15. We did not specifically address the first requirement set out in Pa.R.C.P. 3051 since all parties agreed, and the trial court specifically found, that appellants' petition to open the judgment of *non pros* was timely filed.

16. *See:* footnote 12, *supra.*